465 S.E.2d 185

STATE of West Virginia ex rel. Ira Michael BREWER II, Relator,

v.

Honorable Larry V. STARCHER, Judge of the Circuit Court of Monongalia County, and Susan Tucker, Prosecuting Attorney for Monongalia County, Respondents.

No. 22966.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 12, 1995.

Decided Oct. 27, 1995.

James B. Zimarowski, Morgantown, for Relator.

Daniel DeBiase, Assistant Prosecuting Attorney of Monongalia County, Morgantown, for Respondents.

CLECKLEY, Justice:

In this original proceeding seeking a writ of prohibition, the relator requests that we prohibit the respondent, The Honorable Larry V. Starcher, Judge of the Circuit Court of Monongalia County,[1] from adding any additional terms to the aforementioned plea agreement negotiated under Rule 11(e)(1)(C) of the West Virginia Rules of Criminal Procedure.[2]

## I.

## FACTS AND PROCEDURAL BACKGROUND

The relator, Ira Michael Brewer II, was indicted by a Monongalia County Grand Jury on one count of unlawful assault and on a second count of wanton endangerment involving a firearm. The events relating to the underlying indictment involve a late night brawl at a bar with the relator and his brother on one side and between two and nine other individuals on the other side. There were allegations that a number of weapons were brandished during the fight. During this altercation, the relator purportedly fired a gun, injuring Gary Croston.

Although the facts and the relator's actual role during the event were greatly in dispute, the relator and the State decided the best course of action was to negotiate a plea agreement. A binding plea agreement was negotiated pursuant to Rule 11(e)(1)(C) of

---

1. Although two respondents are listed, we use the term "respondent" in referring only to the circuit judge.

2. Rule 11(e)(1)(C) of the Rules of Criminal Procedure provides:

"In General.—The attorney for the state and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the state will do any of the following:

\* \* \* \* \* \*

"(C) Agreement that a specific sentence is the appropriate disposition of the case[.]"

the Rules of Criminal Procedure. Under the agreement, the relator agreed to plead guilty to the felony charge of wanton endangerment involving a firearm. In return for the relator's plea, the State agreed to dismiss the first count of the indictment charging unlawful assault, also a felony. Additionally, the State agreed it would *nolle prosequi* the two count indictment charging the relator's brother, Jeffrey Scott Brewer, with aiding and abetting both felonies. The plea agreement also indicated that the maximum sentence the relator would receive would be one year in the county jail and a possible fine. The relator agreed to make restitution for all medically related expenses of the victim. The State also agreed not to oppose a work release program for the relator provided the relator made a good faith effort to "cooperate with law enforcement agencies to be specified at a later date."

Following a hearing on March 15, 1995, the respondent entered an order dated March 16, 1995. According to the written plea order, the respondent noted a plea agreement was negotiated with and proposed to the relator, the relator knowingly and willingly entered into the agreement, and the relator understood "that the final decision as to the sentence ... [was] the Court's." The order indicated that during the hearing on the preceding day the respondent "then permitted the parties to execute in open Court the written plea agreement[.]"

A sentencing hearing was held on April 14, 1995. At this hearing, the respondent again followed the specifications of the plea agreement and sentenced the relator to one year in the county jail and a fine of $2,500 plus the costs and expenses of the proceeding. The respondent also ordered the relator would be eligible for work release provided he was able to maintain a job. The relator's income from work release was then supposed to be sent directly to the circuit clerk who would divide the relator's salary and pay half for restitution and return the remainder to the relator for his maintenance.

Following this hearing, the State prepared the written sentencing order. This proposed order mirrored the respondent's oral order during the April 14, 1995, hearing. However-

er, the respondent rejected the proposed order and sent another written order that ultimately modified the prior plea agreement. The second written order kept the earlier terms of the plea agreement, but ordered the relator to pay $5,000 for the pain and suffering of the victim in addition to the $2,500 fine (plus costs) and the restitution for the medical expenses of the victim. Moreover, the order provided that the circuit clerk would apply fifty percent, but not less than $400 of the relator's salary towards restitution for the victim.

A subsequent hearing was held on May 2, 1995, to address issues arising from the second written order. The respondent gave the relator three options: (1) withdraw his guilty plea and proceed to trial upon the original charges; (2) approve the order as amended by the respondent with the additional $5,000 for pain and suffering; or (3) "[t]ake the disputed issued (sic) raised by the ... [relator] to the W. Va. Supreme Court of Appeals." In an order dated May 18, 1995, after describing the events of the May 2, 1995, hearing, the respondent noted that if the relator chose the first option, the trial would be scheduled for as soon as practicable; if the second option was chosen, then relator's counsel should signify acceptance by initialling the order; and if the third option was chosen, then the order modifying the plea agreement would be entered, but the relator's exceptions would be preserved. The relator then filed a petition for a writ of prohibition with this Court and a rule to show cause was issued returnable September 12, 1995.

## II.

## DISCUSSION

In this original action, the relator seeks to prohibit the respondent from vacating his initial plea and sentencing order. In support of the issuance of a writ of prohibition, the relator asserts that (1) the inclusion of the $5,000 for pain and suffering violated both the binding plea agreement created under Rule 11(e)(1)(C) of the Rules of Criminal Procedure; and (2) the respondent violated the relator's procedural due process rights

by unilaterally imposing the additional $5,000 in damages without providing a hearing and without having the relator and his counsel present at the time the sentencing modification was made.

### A.

#### *Standard of Review*

Our cases have not been explicit as to whether the appropriate standard of review is *de novo* or the more deferential standard of clear error or abuse of discretion when a criminal defendant claims a breach of a plea agreement. We take this opportunity to clarify the appropriate standard of review and to explain why the two standards in the context of a plea agreement are not necessarily in conflict.

 Appellate review often calls into play a blend of rules. Indeed, cases involving plea agreements allegedly breached by either the prosecution or the circuit court present two separate issues for consideration: one factual and the other legal. First, the factual findings that undergird a circuit court's ultimate determination are reviewed only for clear error. These are the factual questions as to what the terms of the agreement were and what was the conduct of the defendant, the prosecution, and the circuit court. If disputed, factual questions are to be resolved initially by the circuit court, and these factual determinations will be reviewed under the clearly erroneous standard. *State v. Farley*, 192 W.Va. 247, 452 S.E.2d 50 (1994). *See also Tennant v. Marion Health Care Foundation*, 194 W.Va. 97, 459 S.E.2d 374 (1995). Second, in contrast, a circuit court's articulation and application of legal principles is scrutinized under a less deferential standard. *See Tennant v. Marion Health Care Foundation, supra.* It is a legal question whether specific contested conduct breaches a plea agreement. Therefore, whether the disputed conduct constitutes a breach is a question of law that is reviewed *de novo*.

3. This case is quite unique in that both the relator and the assistant prosecuting attorney who handled this case below argue that the relator is

 The solicitude extended by a reviewing court takes into account the fact that a circuit judge, who has first-hand exposure to the litigants and the evidence in a particular case, is in a considerably better position to bring the scales of justice into balance than an appellate tribunal. *State ex rel. United States Fidelity & Guar. Co. v. Canady*, 194 W.Va. 431, 460 S.E.2d 677 (1995). However, to the extent that findings of fact can be shown to have been predicated upon or induced by errors of law, they will be accorded diminished respect on appeal. *Burnside v. Burnside*, 194 W.Va. 263, 266, 460 S.E.2d 264, 267 (1995). For the most part, in the case *sub judice*, we are not faced with disputed facts and our initial task is to determine only the legal question of whether the respondent's conduct constitutes a breach of the plea agreement. Therefore, our review is *de novo*.

### B.

#### *Rule 11(e)(1)(C) of the West Virginia Rules of Criminal Procedure*

The crux of the issue before us is under what circumstances the provisions of a plea agreement entered under Rule 11(e)(1)(C) (C-type agreements) may be modified once the agreement is judicially accepted and the defendant is sentenced in open court. The relator argues the respondent impermissibly altered the binding plea agreement created pursuant to Rule 11(e)(1)(C) by *sua sponte* adding as restitution an additional $5,000 in damages for pain and suffering.[3] The respondent asserts he was entitled to modify the decree because:

> "(1) After giving due consideration to the uncertain nature of the victim's wishes, and the fact that a handgun was involved, Respondent became dissatisfied with the plea agreement; and (2) The parties' lack of candor and inaccurate representations, regarding the existence and disposition of sexual offense charges against the ... [Relator] in the other division of the Court, led Respondent to view the plea agreement as being inadequate."

entitled to relief because the respondent violated the clear provisions of Rule 11.

We begin our analysis with the observation that there is no absolute right under either the West Virginia or the United States Constitution to plea bargain. To this end, we have noted that a defendant has "no constitutional right to have his case disposed of by way of a plea bargain[.]" *See Myers v. Frazier,* 173 W.Va. 658, 664 n. 5, 319 S.E.2d 782, 788 n. 5 (1984). Therefore, a circuit court need not accept every constitutionally valid guilty plea merely because a defendant wishes to plead. Writing for the United States Supreme Court in *Mabry v. Johnson,* 467 U.S. 504, 507, 104 S.Ct. 2543, 2546, 81 L.Ed.2d 437, 442 (1984), Justice Stevens reasoned that "[a] plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest."

Although parties in criminal proceedings have broad discretion in negotiating the terms and conditions of a plea agreement, this discretion must be permissible under the Rules of Criminal Procedure. Similarly, the decision whether to accept or reject a plea agreement is vested almost exclusively with the experienced men and women who preside at the circuit court level. *See Tucker v. Holland,* 174 W.Va. 409, 416, 327 S.E.2d 388, 396 (1985) (Rule 11 " 'gives a trial court discretion to refuse a plea bargain.' " (Citation omitted)). We say "almost" because all plea agreements must be constitutionally acceptable and in compliance with procedural rules this Court mandates. *See State v. Whitt,* 183 W.Va. 286, 290, 395 S.E.2d 530, 534 (1990) ("trial judge has discretion to refuse a plea bargain agreement if he [or she] follows the procedure prescribed by the rules governing plea agreement procedure"). *See also State v. Guthrie,* 173 W.Va. 290, 315 S.E.2d 397 (1984); *State ex rel. Roark v. Casey,* 169 W.Va. 280, 286 S.E.2d 702 (1982). Thus, a circuit court's discretion is not unlimited. As a general proposition, we believe that a circuit court's unilateral modification of a specific and judicially accepted plea agreement presents a clear violation of Rule 11 and creates serious implications for the everyday business of a circuit court. Today's enunciation of the appropriate legal interpretation of Rule 11 is intended to avoid future repetition.

We next set out the analytical framework for our decision. In *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427, 433 (1971), the United States Supreme Court declared that "when a plea rests in any significant degree on a promise or agreement ... so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Because a plea agreement requires a defendant to waive fundamental rights, we are compelled to hold prosecutors and courts to the most meticulous standards of both promise and performance.

As a matter of criminal jurisprudence, a plea agreement is subject to principles of contract law insofar as its application insures a defendant receives that to which he is reasonably entitled. *See generally State ex rel. Rogers v. Steptoe,* 177 W.Va. 6, 350 S.E.2d 7 (1986) (agreement was enforceable because defendant performed everything required of him). Thus, when a defendant enters into a plea agreement with the prosecution, the circuit court must ensure the defendant receives what is reasonably due him under the agreement. If the defendant lives up to his end of the bargain, the circuit court and the prosecutor are bound by their promises.

It is obvious the circuit court in this case unilaterally attempted to modify the binding plea agreement in question. It is equally clear that the binding nature of the plea agreement was a significant factor in the relator's decision to accept the agreement. By unilaterally modifying the terms of the agreement, unless justified under the fraud exception discussed below, the respondent significantly and deliberately breached the agreement. It is a defendant's rights which are violated when a plea agreement, after being accepted by a circuit court, is broken. It must again be emphasized that in exchange for a plea agreement a defendant waives important rights. He offers that waiver in exchange for the actual sentence or impact on the judge. Where he fails to get

the benefit of that promise, the waiver is ineffective.

Although we review the alleged breach under principles of contract law, we must determine under our Rules of Criminal Procedure whether any exceptions exist that justify the respondent's retreat from his commitment and promise to abide by the plea agreement.

 The procedures associated with a circuit court's role in the plea agreement process are found in Rule 11(e). Under this rule, defendants and prosecutors are permitted to engage in plea bargaining. Rule 11(e)(1)(A)–(D) lists four sentencing options a prosecutor may choose to use in negotiating for a particular plea. They vary from a simple sentence recommendation by a prosecutor to an agreed upon sentence.[4] Specifically, a prosecutor may: (1) move to dismiss some charges, (2) recommend a sentence or agree not to oppose a sentence, (3) agree to a specific sentence, or (4) agree not to seek additional indictments or informations about past known criminal activity. Once an agreement has been formulated, it must be presented to the circuit court for approval. A circuit court, however, is under no obligation to accept a plea. *See* Syl. pt. 2, in part, *Myers v. Frazier, supra* (" 'West Virginia Rules of Criminal Procedure, Rule 11, gives a trial court discretion to refuse a plea bargain.' " (citation omitted)). Thus, a circuit court may properly reject a plea agreement based on undue leniency, including the failure of the plea agreement to provide for restitution.

If a plea agreement is approved, the type and nature of the plea agreement control whether a circuit court has the discretion to impose a sentence inconsistent with that specified in the agreement. If a sentence is specified in a plea agreement pursuant to either Rule 11(e)(1)(A) or Rule 11(e)(1)(C), then a circuit court must apply the sentence included in the agreement. Indeed, the whole design of an agreement under Rule 11(e)(1)(C) is to control sentencing.

 The plea agreement in this case was clearly a C-type agreement. The text of the agreement explicitly provided that it had been negotiated under Rule 11(e)(1)(C). Moreover, the fact that the parties agreed to a specific disposition rather than a sentencing recommendation is a clear indication that the parties intended to negotiate a C-type agreement. When a C-type agreement is involved, a circuit court has only three options: (1) accept the agreement; (2) reject the agreement; or (3) defer a decision pending a presentence investigation.[5] *See* Syl. pt. 2, *State ex rel. Forbes v. Kaufman,* 185 W.Va. 72, 404 S.E.2d 763 (1991) (discussing the ramifications of proposing a sentencing agreement under W.Va.R.Crim.P. 11(e)(1)(C)). Furthermore, a circuit court "may not accept the guilty plea and impose a different sentence." Syl. pt. 2, in part, *State ex rel. Forbes v. Kaufman, supra. See also U.S. v. Aguilar,* 884 F.Supp. 88 (E.D.N.Y. 1995). Once a circuit court unconditionally accepts on the record a C-type agreement, the circuit court is without authority to vacate the plea and order reinstatement of the original charge. Furthermore, after a defendant is sentenced on the record in open court, unilateral modification of the sentencing decision by the circuit court is not an option contemplated within this rule.

When a defendant pleads guilty pursuant to a plea agreement, the status of the plea agreement should not have to be implied. This interpretation flows inexorably from the straightforward language of Rule 11, which mandates that at the time a plea is offered a circuit court shall indicate on the record whether it will accept the plea, reject it, or defer the decision. *See* W.Va.R.Crim.P. 11(e)(2); 8 Robert M. Cipes, *Moore's Federal Practice* ¶ 11.05[2] at 11–90 (Revised 1994). Additionally, once a circuit court accepts the plea agreement, it is required under Rule 11(e)(3) to tell the defendant the disposition provided for in the agreement will be incorporated in the judgment and sentence. "This serves the purpose of informing the defendant immediately that the agreement

---

**4.** See note 2 for the text of Rule 11(e)(1)(C) of the Rules of Criminal Procedure.

**5.** A circuit court may opt for the latter only if the defendant consents to a review of the presentence report. *See* W.Va.R.Crim.P. 32(c).

will be implemented." Fed.R.Crim.P. 11 advisory committee note, 1974 Amendment.[6]

If the circuit court made its acceptance predicated on facts known to it, but indicated to the parties the need to review the presentence report, then the relator would be entitled to no relief. *See* Syl. pt. 14, *Myers v. Frazier, supra; United States ex rel. Selikoff v. Commissioner of Correction,* 524 F.2d 650, 653 n. 1 (2nd Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1725, 48 L.Ed.2d 194 (1976). But once the agreement was accepted, thereby binding the prosecution and the defendant, the respondent lost his broad discretion to reject the agreement and vacate the plea. Obviously, if a circuit court is free to accept or reject a plea agreement at any time, there would be no need to include deferral as an option.[7]

■ As we will discuss later, there is no reasonable dispute in this case that the circuit court accepted the guilty plea and that the bargained for predicate, a binding and specific sentence, was set out on the record and was accepted as well. As of the time the respondent accepted the plea agreement in open court and clearly when the respondent announced a sentence consistent with the plea agreement, the bargain was sealed and the agreement became binding.[8] There exists no authority under these circumstances, short of fraud on the court, that permits a circuit court to change its mind as to the wisdom of the agreement and to refuse to enforce it. *See Lombrano v. Superior Court,* 124 Ariz. 525, 606 P.2d 15 (1980) (because the acceptance of defendant's guilty plea places him or her in jeopardy, a circuit court may not *sua sponte* set aside the plea); *People v. Matthews,* 71 A.D.2d 864, 419 N.Y.S.2d 192 (1979) (in the absence of fraud, a plea agreement cannot be set aside); *People v. Damsky,* 47 A.D.2d 822, 822, 366 N.Y.S.2d 13, 14 (1975) (trial court is without power "to withdraw a defendant's plea of guilt").

■ Plea bargaining is "an essential component of the administration of justice" *Santobello v. New York,* 404 U.S. at 260, 92 S.Ct. at 498, 30 L.Ed.2d at 432, and the requirement of Rule 11 that a circuit court make a definite announcement of acceptance, rejection, or deferral of its decision concerning the plea agreement is indispensable to a criminal justice system so heavily dependent on the plea agreement process. *See United States v. Burruezo,* 704 F.2d 33, 38 (2nd Cir.1983); *United States v. Herrera,* 640 F.2d 958, 960–62 (9th Cir.1981) (noting the trial court's acceptance or rejection plays a critical role in the plea agreement process); *United States*

---

**6.** Even where a circuit court fails to make known the status of the agreement, the implication is that the court accepted the agreement in its entirety. *See United States v. Holman,* 728 F.2d 809, 812 (6th Cir.1984), *superseded by statute as stated in U.S. v. Kemper,* 908 F.2d 33 (6th Cir. 1990). In other words, where this failure requires an implication as to what was intended, the implication must be construed against the circuit court because the court possessed control over clarity.

**7.** Rule 11 seems clear. If a plea is accepted, the circuit court does not announce any deferral of that acceptance, and the defendant adheres to the terms of the agreement, all parties to the agreement are bound. Although the rule does permit deferral of the decision to accept or reject the plea, usually for the purpose of reviewing a presentence report, the mere postponement of sentencing itself to a future date does not authorize the circuit court to remake or vacate the plea agreement for whatever reasons may later seem appropriate.

**8.** Even though no written order was accepted by the relator and the prosecution and signed by the respondent, the oral order from the April 14

hearing is still viewed as binding. Prior case law consistently indicates that a judge speaks through his or her written orders. Although written orders are a convenient method of ascertaining finality, they are not sacrosanct. Clearly, statutory mandates requiring disclosure in open court of all elements of a plea agreement take precedence. *See* W.Va.R.Crim.P. 11(g) (requiring that a "verbatim record of the proceedings" must be made concerning a plea agreement). Rule 11 is the controlling rule in a plea agreement situation and permitting later written modifications of a plea accepted in open court will violate this rule. As noted by the Third Circuit Court of Appeals in *United States v. Gonzalez,* 918 F.2d 1129, 1133 (3rd Cir.1991), *cert. denied sub nom., Caba v. U.S.,* 498 U.S. 1107, 111 S.Ct. 1015, 112 L.Ed.2d 1097; *cert. denied sub nom., Vasquez v. U.S.,* 499 U.S. 968, 111 S.Ct. 1604, 113 L.Ed.2d 667; *cert. denied, Gonzalez v. U.S.,* 499 U.S. 982, 111 S.Ct. 1637, 113 L.Ed.2d 733 (1991), "[i]t is axiomatic that a plea agreement is neither binding nor enforceable until it is accepted in open court."

*v. Thomas,* 580 F.2d 1036, 1037 (10th Cir. 1978), *cert. denied,* 439 U.S. 1130, 99 S.Ct. 1051, 59 L.Ed.2d 92 (1979) (treating a promise " 'on behalf of the judiciary' " the same as a promise by the government. (Citation omitted)). If only the prosecutor and the defendant were bound by a judicially accepted plea agreement and not the judge, it would substantially reduce the advantage of plea bargaining and thereby dilute the incentive for a defendant to plead guilty.[9] A circuit court's faithful observance of the requirements of Rule 11 is just as vital to the fairness and efficiency of the criminal process as the prosecutor's. A circuit court not only must insure the agreement is understood by a defendant, but has an equal obligation to satisfy itself that the terms of the agreement are adhered to by both sides, as well as the court itself.[10] To resolve any doubt, we hold today that a circuit court has no authority to vacate or modify, *sua sponte,* a validly accepted guilty plea under Rule 11(e)(1)(C) because of subsequent events that do not impugn the validity of the original plea agreement.

Our decision is in accord with the vast majority of jurisdictions that have considered this issue.[11] In *United States v. Blackwell,* 224 U.S.App.D.C. 350, 362, 694 F.2d 1325, 1338 (1982), the court stated with abundant clarity that once a plea is accepted under Rule 11, a circuit court lacks authority to repudiate a plea agreement unless the facts of the case fit within one narrow exception of fraud on the court:

> "Although, as pointed out in *Santobello* ... there is 'no absolute right to have a guilty plea accepted,' and '[a] court may reject a plea in exercise of sound judicial discretion,' once a judge has accepted a plea and bound the defendant to it, [he or] she cannot, except possibly for fraud, refuse to carry through on the bargain." (Citation omitted).

As stated previously, the respondent advances two reasons why his effort to modify the plea agreement and the subsequent withdrawal of the guilty plea were not an infringement of the policy and rights protected under Rule 11: (1) after reviewing the facts, the respondent gave more weight to the use of a handgun and the vacillation of the victim and the victim's family; and (2) the possibility that the parties and counsel misrepresented facts to the respondent regarding another pending charge. Only the second reason raises a concern to this Court.

█ If the sole reason for the modification of the plea agreement was based on information that existed at the time of sentencing or was contained in the presentence report, such a modification or vacatur of the plea is particularly inappropriate.[12] *See U.S.*

---

9. In *Dotson v. State,* 321 Md. 515, 518, 583 A.2d 710, 711 (1991), the Maryland Court of Appeals stressed the importance of promoting certainty in plea agreements:

> " 'We recognized the importance of this "certainty" aspect of plea bargaining, and the adverse effect its loss would have on the process.... "If the prosecutor cannot rely upon the plea bargain, the potential 'chilling effect' upon the very institution of plea bargaining could be devastating." ... Similar results could ensue if the defendant were unable to rely upon the bargain.' " (Citations omitted).

10. The purpose of Rule 11's insistence is that there be a public record of the terms of the plea agreement. Rule 11(g) requires that "[a] verbatim record of the proceedings at which the defendant enters a plea shall be made and, if there is a plea of guilty ... the record shall include, without limitation, the court's advice to the defendant, the inquiry into voluntariness of the plea, including any plea agreement, and the inquiry into the accuracy of a guilty plea."

11. This Court in *Myers, supra,* listed the following cases, both for and against the notion that a circuit court may initially accept and then reject a plea agreement: *U.S. v. Blackwell,* 224 U.S.App.D.C. 350, 694 F.2d 1325 (D.C.Cir.1982); *U.S. v. Cruz,* 709 F.2d 111 (1st Cir.1983); *U.S. v. Burruezo, supra; U.S. v. Holman, supra; U.S. v. Runck,* 601 F.2d 968 (8th Cir.1979), *cert. denied,* 444 U.S. 1015, 100 S.Ct. 665, 62 L.Ed.2d 644 (1980); *Banks v. State,* 56 Md.App. 38, 466 A.2d 69 (1983). *Compare Dolchok v. State,* 639 P.2d 277 (Alaska 1982); *Reaves v. State,* 417 So.2d 1000 (Fla.App.1982); *Barker v. State,* 259 So.2d 200 (Fla.App.1972); *State v. Wenzel,* 306 N.W.2d 769 (Iowa 1981); *People v. Dulin,* 122 Mich.App. 382, 332 N.W.2d 492 (1983).

Unlike the present case, all the cases listed above involved a lower court rejecting a plea agreement during the sentencing hearing.

12. Under Rules 11 and 32 of the Rules of Criminal Procedure, a circuit court cannot use this information in its initial decision to accept or reject a plea unless it has obtained the defen-

*v. Holman,* 728 F.2d 809 (6th Cir.1984), *superseded by statute as stated in U.S. v. Kemper,* 908 F.2d 33 (6th Cir.1990). It must be remembered that Rule 11 expressly grants a circuit court the right to defer its decision on the plea agreement until it acquires additional information necessary for an intelligent decision. Thus, if the circuit court desired more information or to see the presentence report in making its decision, it should have expressly deferred its decision at the time the plea was offered. As stated earlier, the respondent may not simply change his mind on the basis of information already before him or which is contained in the presentence report, at least where that information reveals less than fraud.

██ On the other hand, if proven, a charge of fraud or misrepresentation poses a serious threat to the integrity of judicial proceedings. For that reason, we adopt and apply the "fraud exception" as a necessary rule to enhance the administration of justice.[13] This exception "is aimed at penalizing deceitful behavior engaged in during the negotiating of the plea agreement, in its presentation to the [circuit] court, or in its execution by the defendant." *U.S. v. Blackwell,* 224 U.S.App.D.C. at 364 n. 18, 694 F.2d at 1338 n. 18. *See Hamlin v. Barrett,* 335 So.2d 898 (Miss.1976) (defendant deliberately concealed prior felony when questioned by the judge at the time plea accepted for promise of probation). It is obvious to us that we do not have a full and complete record on this issue, and it is necessary to remand this issue

to the circuit court for a more complete factual development of the matter. For the reasons discussed below, we find it necessary to appoint another judge to conduct the hearing.

██ Although there may be times when a judge may change his mind after accepting a guilty plea without violating the rights of a defendant, the judge must do so within the framework of the Rules of Criminal Procedure. Even if fraud on the circuit court had been clearly shown, we believe the respondent's attempt to modify his sentencing decision and to impose that modification on the relator resulted in impermissible participation in plea negotiations.[14] If fraud on the court existed, the respondent's only choice when he was preparing the written order was to either accept or reject the agreement. The respondent's attempt to modify the agreement, even a modest modification, and to impose the new conditions on the defendant, constitutes a clear violation of the prohibition against judicial involvement in plea bargaining contained in Rule 11 of the Rules of Criminal Procedure. Rule 11(e) advises that attorneys for the State and the defendant "may engage in [plea] discussions with a view toward reaching an agreement[,]" but the rule concludes with the admonition that "[t]he court shall not participate in any such discussions." As we recently interpreted, this provision is a bright-line rule. *See* Syl. pt. 8, *State v. Sugg,* 193 W.Va. 388, 456 S.E.2d 469 (1995) (the unambiguous mandate

---

dant's consent. If a circuit court were entitled to vacate a previously accepted plea agreement, based on information contained in the presentence report, there would be no reason to obtain the defendant's consent to use the report during its initial consideration of the plea agreement.

**13.** It cannot be gainsaid that a court asked to dispense equitable remediation should give serious consideration to the interest of the public in maintaining the highest amount of integrity in criminal proceedings. Here, the circuit court purportedly found the public interest would be disserved unless restitution was granted. It is "old hat" that a court called upon to do equity should always consider whether the requesting party has acted with clean hands and in good faith. Although the respondent found misrepresentation, he did so only after a unilateral modification in the order was challenged. Thus, the

relator argues before this Court that the proffered justifications for the modification were disingenuous. The record before us is simply inadequate for an appellate determination of the fraud issue. On remand, this issue must be resolved by a neutral and detached trier of fact.

**14.** The relator conceded during arguments that he did not preserve the issue of judicial participation below. In our recent decision of *State v. Miller,* 194 W.Va. 3, 17, 459 S.E.2d 114, 128 (1995), we adopted the federal standard for determining "plain error." We believe that judicial participation in plea negotiation is so inherently dangerous, an appellate court should raise the issue *sua sponte* and order appropriate relief. *See also United States v. Corbitt,* 996 F.2d 1132, 1135 (11th Cir.1993) ("Judicial participation [in plea discussions] is plain error, and the defendant need not show actual prejudice").

of Rule 11 prohibits the participation of the judge in plea negotiations under any circumstances; it is a rule that admits of no exceptions).

Judicial involvement with plea bargaining casts doubt over the entire process. "The primary concern of those who would dissociate the judge from the plea bargaining process ... [is] that judicial intervention may coerce that defendant into an involuntary plea he would not otherwise enter." *United States v. Werker*, 535 F.2d 198, 201–02 (2nd Cir.), *cert. denied sub nom., Santos–Figueroa v. U.S.*, 429 U.S. 926, 97 S.Ct. 330, 50 L.Ed.2d 296 (1976). The prohibition on court participation in plea negotiations in Rule 11 "is designed to totally eliminate judicial pressure from the plea bargaining process." *United States v. Corbitt*, 996 F.2d 1132, 1135 (11th Cir.1993). As this Court noted in *State v. Sugg*, 193 W.Va. at 406–07, 456 S.E.2d at 487–88, there are many reasons for this strict prohibition:

"First and foremost, it serves to diminish the possibility of judicial coercion of a guilty plea, regardless of whether the coercion would cause an involuntary, unconstitutional plea. Second, such involvement is likely to impair the trial court's impartiality. A judge who suggests or encourages a particular plea bargain may feel a personal stake in the agreement and, therefore, may resent a defendant who rejects his advice. Third, judicial participation in plea discussions creates a misleading impression of the judge's role in the proceedings. As a result of his participation, the judge is no longer a judicial officer or a neutral arbiter. Rather, he becomes or seems to become an advocate for the resolution he suggests to the defendant. For these reasons, Rule 11(e)(1) draws a bright-line prohibiting judicial participation in plea negotiations."

 The respondent's conduct and statements in the instant case, while falling far short both as to degree and content in comparison with what was alleged in *Sugg*, nonetheless crossed the line into the realm of participation.[15] We need not make an evaluation of the degree of judicial participation in this case because the modified order that was later proposed by the circuit court was rejected. Although it is clear the circuit court claimed the modified order was motivated because of the interest of the victim, Rule 11(e) requires that this concern, when embodied in a specific sentence proposal, however well-intentioned,[16] be addressed by someone other than the judge before whom the defendant pled guilty and was sentenced.

 Finding a violation of this rule does not end our inquiry. As provided by Rule 11(h), a violation of Rule 11 does not necessarily require automatic reversal or vacatur. Rather, when a defendant claims that a circuit court failed to comply with Rule 11, a straightforward, two-step "harmless error" analysis must be conducted: (1) Did the circuit court in fact vary from the procedures required by Rule 11, and (2) if so, did such variance affect substantial rights of the de-

**15.** The commentary to Rule 11 of the Federal Rules of Criminal Procedure and our previous decisions make it clear that the circuit court is expected to take an active role in evaluating a plea agreement once it is disclosed. This evaluation may include a consideration of the punishment allowable under the agreement, as compared to the punishment appropriate for the defendant's conduct as a whole. Therefore, any such comments made during a discussion of the effects of a plea agreement properly presented to the circuit court do not constitute improper participation in violation of Rule 11.

On the other hand, although a circuit court may state its reasons for rejecting a plea agreement, it may not also suggest a plea agreement that would be acceptable. When a circuit court goes beyond providing reasons for rejecting a plea agreement presented and comments or otherwise makes known what it would accept, the court crosses the line established by Rule 11 and becomes involved in the negotiations.

**16.** We do not disagree with the respondent's desire to protect victims in cases of serious crimes. In Syllabus Point 5, in part, of *Myers v. Frazier, supra*, we stated "that consideration must be given not only to the general public's perception that crimes should be prosecuted, but to the interests of the victim as well." In *Tucker v. Holland*, 174 W.Va. at 417, 327 S.E.2d at 396, we explicitly stated that a circuit court may reject a plea agreement solely on the basis that "restitution had not been resolved[.]" Our decision today merely requires compliance with the mandatory rules for conducting court business, especially when those rules embody within them notions of due process.

fendant? Having answered the first question, we must proceed to the second.

 There are two possible remedies for a broken plea agreement—specific performance of the plea agreement or permitting the defendant to withdraw his plea. *See State v. Conley,* 168 W.Va. 694, 285 S.E.2d 454 (1981); *State ex rel. Clancy v. Coiner,* 154 W.Va. 857, 179 S.E.2d 726 (1971). *See also Santobello,* 404 U.S. at 263, 92 S.Ct. at 499, 30 L.Ed.2d at 433 (noting there are two ways to remedy a breach of a plea agreement: giving the defendant "the opportunity to withdraw his plea of guilty" or "specific performance of the agreement)." [17] Of course, a major factor in choosing the appropriate remedy is the prejudice caused to the defendant. *See State v. Hodges,* 172 W.Va. 322, 305 S.E.2d 278 (1983); *State ex rel. Simpkins v. Harvey,* 172 W.Va. 312, 305 S.E.2d 268 (1983), *superseded by statute as stated in State ex rel. Hagg v. Spillers,* 181 W.Va. 387, 382 S.E.2d 581 (1989); *Brooks v. Narick,* 161 W.Va. 415, 243 S.E.2d 841 (1978); *United States v. Delegal,* 678 F.2d 47 (7th Cir.1982); *United States v. Runck,* 601 F.2d 968 (8th Cir.1979), *cert. denied,* 444 U.S. 1015, 100 S.Ct. 665, 62 L.Ed.2d 644 (1980). In *Holman,* the court placed this issue in its proper context:

"If breach of an agreement calling for a specific sentence forces a defendant to proceed to trial, and the trial results in a greater sentence than the one involved in the agreement, then the prejudice would be clear. *Delegal,* 678 F.2d at 52. If Holman had elected to go to trial, and received a sentence greater than the one year and one day, the only appropriate remedy would be specific performance of the agreement." 728 F.2d at 813.

As stated previously, in the case *sub judice,* the respondent offered the relator three choices. The relator chose to institute this action. Upon remand, the circuit court must determine whether there were substantial misrepresentations made to the respondent during the previous hearing sufficient enough to constitute fraud on the court. If so, the circuit court must permit the relator the option to withdraw his guilty plea. If the circuit court concludes that the evidence is insufficient to constitute fraud on the court, the circuit court is directed to sentence the defendant as specified in the plea agreement. [18] If that is done, the relator will obtain all he and the prosecutor say he was promised.

## III.

## CONCLUSION

For the aforesaid reasons, the writ of prohibition requested by the relator is granted as moulded. [19] The case is remanded to the

17. We also recognize that, in unusual circumstances, upon remand by an appellate court, a circuit court may craft other remedies such as imposing a specific sentence because such sentence is the only just remedy and the only one which could now approximate specific performance of the agreement.

18. While the choice of remedy is normally left to the discretion of the sentencing court, *see Santobello,* 404 U.S. at 263, 92 S.Ct. at 499, 30 L.Ed.2d at 433, this Court has repeatedly expressed a preference for specific performance of the agreement rather than vacating the plea. *See generally Sellers v. Broadwater,* 176 W.Va. 232, 342 S.E.2d 198 (1986); *State v. Ball,* 175 W.Va. 652, 337 S.E.2d 310 (1985).

19. The relator also contends the respondent erred by including $5,000 for pain and suffering because the Victim's Protection Act of 1994 encompassed in W.Va.Code, 61-11A-1, *et seq.,* does not provide for pain and suffering as a form of damages recoverable from the relator. We agree.

The Victim's Protection Act permits a circuit court to order restitution in certain situations. W.Va.Code, 61-11A-4(2), states that a court may order restitution

"(2) In the case of an offense resulting in bodily injury to a victim

"(A) Pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

"(B) Pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

"(C) Reimburse the victim for income lost by such victim as a result of such offense[.]"

Nothing in this statute suggests a circuit court may order restitution for anything but specific medical costs. Although restitution for pain and suffering may be necessary and beneficial to the well being of the victim, a circuit court may not order this form of restitution under the Victim's Protection Act of 1994. The victim is not pre-

Circuit Court of Monongalia County for further proceedings consistent with this opinion. Inasmuch as this Court has determined that the actions of the respondent have caused him to become involved in plea negotiations, we find the respondent is disqualified. On remand, the circuit clerk should reassign this matter to the Honorable Robert Stone, Judge of the Circuit Court of Monongalia County, for any additional proceedings on this matter.

Writ granted as moulded.

MILLER, J., Retired, sitting by temporary assignment.

ALBRIGHT, J., did not participate.

cluded, however, from filing an independent civil

action to recover additional damages.