I am authorized to state that Justice MAYNARD joins in this dissent.

559 S.E.2d 929

STATE of West Virginia EX REL. Kevin Ray GARDNER, Petitioner,

v.

The WEST VIRGINIA DIVISION OF CORRECTIONS and the West Virginia Parole Board, Respondents.

No. 30038.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 8, 2002.

Decided Jan. 30, 2002.

---

A. Courtenay Craig, Huntington, for Petitioner.

Darrell V. McGraw, Jr., Attorney General, Daynus Jividen, Senior Assistant Attorney General, Charleston, for Respondents.

1. Mr. Gardner also named the Division of Corrections as a respondent.

2. Mr. Gardner's brief has raised issues concerning the legality of his incarceration after being returned from Ohio. However, this case was accepted by the Court solely on the issue of parole

DAVIS, Chief Justice.

Kevin Ray Gardner, petitioner (hereinafter referred to as "Mr. Gardner"), filed this writ of habeas corpus seeking relief from a decision by the West Virginia Parole Board, respondent[1] (hereinafter referred to as "Parole Board"), revoking his parole. Mr. Gardner contends that revocation of his parole was unlawful because he fulfilled a conditional agreement with the Parole Board that precluded revocation of his parole. After reviewing the briefs and hearing oral arguments, we agree with Mr. Gardner.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On or about June 1, 1995, Mr. Gardner pled guilty to the crime of burglary. He was sentenced to one to fifteen years imprisonment by the Circuit Court of Cabell County. The sentence was made to run concurrently with a conviction and sentence Mr. Gardner received in the state of Ohio in 1995. The Ohio sentence was five to twenty-five years imprisonment for an aggravated burglary conviction. Mr. Gardner initially served both sentences in Ohio.

In 1998, Mr. Gardner was paroled by Ohio and returned to West Virginia. Upon his return to West Virginia, Mr. Gardner was imprisoned.[2] He was granted parole from his West Virginia sentence in April of 2000.

In September 2000, Mr. Gardner was stopped by a state trooper while driving a motor vehicle.[3] Mr. Gardner attempted to flee immediately after being stopped. However, Mr. Gardner wrecked the car he was driving and was apprehended. Shortly thereafter, Mr. Gardner was charged with misdemeanor offenses that included battery on a police officer, fleeing arrest and causing property damage, and striking an unattended vehicle.

revocation. Further, the record before this Court is totally inadequate to address the merits of the other issues raised.

3. The record does not indicate why Mr. Gardner was stopped.

On or about December 6, 2000, parole violation charges were filed against Mr. Gardner as a result of the September incident. Instead of holding a final revocation hearing on the parole violation charges, the Parole Board entered a written agreement with Mr. Gardner. The agreement was to restore his parole conditioned upon his having no other parole violations for one month after its execution. The actual period covered by the agreement was December 21, 2000, to January 21, 2001.[4]

Mr. Gardner committed no new parole violations during the period of the agreement with the Parole Board. On January 18, 2001, Mr. Gardner pled guilty to the three misdemeanor charges that prompted the initial parole revocation proceedings. As a consequence of his guilty plea to the misdemeanor charges on January 31, 2001, Mr. Gardner was charged with violating his parole. A parole revocation hearing was held on April 26, 2001. On May 7, 2001, the Parole Board issued an order revoking Mr. Gardner's parole. Mr. Gardner filed a request with this Court seeking a stay of execution of the parole revocation order pending an appeal of the decision. On May 23, 2001, this Court issued an order staying the parole revocation order. Then, Mr. Gardner filed the instant writ of habeas corpus challenging the parole revocation order.

4. During oral argument, counsel for the Parole Board attempted to assert that the conditional agreement covered an unspecified period of months. However, the agreement covered only one month. Paragraph 2 of the conditional agreement stated: "That the defendant shall forfeit all extra privileges for one month, with the exception of work, a term that shall expire January 21, 2001. Upon successful completion of this new conditional time period of one month, the defendant shall continue his previous parole plan without additional terms."

5. Subsequent to filing a response to the rule to show cause issued by this Court, the Parole Board filed a motion seeking to dismiss the matter as moot. The motion was based upon the fact that Mr. Gardner was arrested on September 28, 2001, for DUI. As a result of this arrest, a new parole revocation proceeding was commenced against Mr. Gardner. On December 5, 2001, the Parole Board revoked Mr. Gardner's

## II.

### STANDARD OF REVIEW

This case requires the Court to review a final order of the Parole Board. As a general rule this Court will not disturb a final administrative order unless it is clearly wrong. *See* Syl. pt. 1, *Randolph County Bd. of Ed. v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989). *See also Phillips v. Fox*, 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995) ("In reviewing challenges to ... findings and conclusions ... we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the ... underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review."). This Court made clear in syllabus point 3 of *State ex rel. Eads v. Duncil*, 196 W.Va. 604, 474 S.E.2d 534 (1996) that "[t]he West Virginia [Parole] Board ... must act in a way which is not unreasonable, capricious, or arbitrary."

## III.

### DISCUSSION

Mr. Gardner contends that he entered a valid written agreement with the Parole Board that required the Parole Board refrain from revoking his parole for the September 2000 arrest, conditioned upon his having no further parole violations during the period from December 21, 2000, to January 21, 2001.[5]

parole based upon the arrest for DUI. The Parole Board contends in its motion to dismiss that the issue of the validity of the first parole revocation is now moot, because Mr. Gardner committed new acts that warranted the second parole revocation. This Court has observed generally that "'[m]oot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court.' Syllabus Point 1, *State ex rel. Lilly v. Carter*, 63 W.Va. 684, 60 S.E. 873 (1908)." Syl. pt. 5, *West Virginia Educ. Ass'n v. Consolidated Pub. Ret. Bd.*, 194 W.Va. 501, 460 S.E.2d 747 (1995).

Mr. Gardner filed a response to the motion to dismiss. The response has made numerous allegations as to why the instant proceeding is not moot. One of Mr. Gardner's allegations appears to have merit. Mr. Gardner alleges that he was not convicted of DUI, because "[t]he charges were dismissed December 20, 2001." It has also

In searching for guidance in resolving issues surrounding the effects and implications of an agreement entered into by the Parole Board and a parolee, we observe that there is a close relationship between this type of an agreement and a plea agreement. Indeed, the major difference between these two types of agreements is that a plea agreement is not valid until accepted by a trial court. *See* Syl. pt. 3, in part, *State ex rel. Brewer v. Starcher,* 195 W.Va. 185, 465 S.E.2d 185 (1995) ("Although the parties in criminal proceedings have broad discretion in negotiating the terms and conditions of a plea agreement . . ., the decision whether to accept or reject a plea agreement is vested almost exclusively with the circuit court."). Because these two types of agreements are so similar in use and effect, we find that the law applicable to each should be the same. Consequently, we hold that principles of law developed in relation to plea agreements between the State and a criminal defendant apply with equal force to written conditional agreements entered between the West Virginia Parole Board and a parolee. Accordingly, to resolve the issues raised in connection with the parole agreement before us, we look to principles that are applicable to a plea agreement between the State and a criminal defendant.

We have recognized that "[a]s a matter of criminal jurisprudence, a plea agreement is subject to principles of contract law insofar as its application insures a defendant receives that to which he is reasonably entitled." *State ex rel. Brewer v. Starcher,* 195 W.Va. 185, 192, 465 S.E.2d 185, 192 (1995). Such agreements require "ordinary contract principles to be supplemented with a concern that the bargaining and execution process does not violate the defendant's right to fundamental fairness[.]" *State v. Myers,* 204 W.Va. 449, 458, 513 S.E.2d 676, 685 (1998). This Court made clear in syllabus point 4 of *Myers,* in part, that "[w]hen a defendant enters into a valid plea agreement with the

State . . ., an enforceable 'right' inures to both the State and the defendant not to have the terms of the plea agreement breached by either party." *See State ex rel. Gray v. McClure,* 161 W.Va. 488, 492, 242 S.E.2d 704, 707 (1978) ("The rule we follow . . . is that a prosecuting attorney . . . is bound to the terms of a plea agreement once the defendant enters a plea of guilty or otherwise acts to his substantial detriment in reliance thereon."). We have further recognized that " '[d]ue process concerns arise in the process of enforcing a plea agreement.' " *Myers,* 204 W.Va. at 457, 513 S.E.2d at 684 (quoting *State v. Smith,* 207 Wis.2d 258, 558 N.W.2d 379, 385 (1997)). Furthermore, in *Gray* we noted that "[p]ermitting the prosecution to breach a plea bargaining agreement has been characterized as 'extremely detrimental to the administration of justice if it should be established.' " *Gray,* 161 W.Va. at 491, 242 S.E.2d at 706 (quoting *People v. Siciliano,* 185 Misc. 149, 152, 56 N.Y.S.2d 80, 82 (1945)). Thus, "when a plea rests in any significant degree on a promise or agreement . . . so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971).

Under the above principles, the Parole Board and Mr. Gardner were bound by the express terms of their written agreement. Pursuant to that agreement Mr. Gardner had to remain free of any violation of his parole during the period from December 21, 2000, to January 21, 2001. Mr. Gardner fulfilled his end of the agreement. *See* Syl., in part, *State v. Ward,* 112 W.Va. 552, 165 S.E. 803 (1932) ("An agreement between [the State] and an accused . . . should be upheld ordinarily when the accused has fulfilled his part of the agreement."). The Parole Board, however, breached its end of the agreement by revoking Mr. Gardner's parole for conduct occurring before December 21,

been alleged by Mr. Gardner that the chairman of the Parole Board informed him that the second parole revocation order would be dismissed upon receipt of the dismissal order of the DUI charges. However, according to Mr. Gardner, the chairman of the Parole Board changed his mind and has indicated the Parole Board would not act on dismissing the second parole revocation until the instant proceeding has been decided.

Although we make no ruling on the validity or status of the second parole revocation, we are of the opinion that the question of the validity of the first parole revocation is not moot. In view of the possibility that Mr. Gardner may in fact succeed in having the second parole revocation order dismissed, this would still leave in tact the first parole revocation order. We therefore deny the motion to dismiss filed by the Parole Board.

2000. *See Myers,* 204 W.Va. at 459, 513 S.E.2d at 686 ("If the State fails to uphold its commitment under a plea agreement by breaching a promise upon which a guilty plea is based, the resulting conviction simply cannot stand.").

The Parole Board has offered two implausible arguments to justify its violation of the agreement. First, the Parole Board contends that the guilty plea entered by Mr. Gardner was different from the parole violation charges. It is the position of the Parole Board that the parole violation charges did not include pleading guilty to the offenses of September 2000, thus, the guilty plea was new. This contention is meritless. The parole violation charges brought against Mr. Gardner were based upon offenses committed by him during the September 2000 incident. The fact that Mr. Gardner eventually pled guilty to those offenses did not somehow transform such offenses into new offenses. Were this Court to allow the Parole Board to make such agreements and violate them in the manner done in this case, the Parole Board would have free reign to entice parolees to plead guilty to offenses under the belief that their parole would not thereby be revoked. In fact, the Parole Board could then revoke their parole under the guise of new and different parole violation charges based upon a plea of guilty to pending charges.

Another argument made by the Parole Board is that the agreement made with Mr. Gardner only precluded the Parole Board from going forward with the parole revocation charges initially filed. The Parole Board contends that nothing in the agreement precluded the Division of Corrections or the Southwestern Regional Parole Services Office from bringing charges against Mr. Gardner because of his guilty plea. We find this argument untenable. Once the Parole Board entered such an agreement with Mr. Gardner, that agreement bound all State entities that may have had authority to file parole violation charges against Mr. Gardner.

In syllabus point 8 of *Brewer,* we noted, in part, that "[t]here are two possible remedies for a broken plea agreement—specific performance of the plea agreement or permitting the defendant to withdraw his plea." In the instant proceeding, Mr. Gardner is entitled to specific performance of the agreement he made with the Parole Board.

## IV.

### CONCLUSION

The parole revocation order against Mr. Gardner, dated May 7, 2001, is deemed void and unenforceable. The Court's mandate shall issue forthwith.

Writ granted as moulded.