# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

**June 24, 2013**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**vs)  No. 12-0817** (Upshur County 11-F-82)

**John Paul Cottrill,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner, John Paul Cottrill, by counsel Timothy V. Gentilozzi, appeals the denial of his post-trial motions and his conviction by a jury of one count of grand larceny and one count of felony destruction of property. The Circuit Court of Upshur County entered petitioner's sentencing order on June 11, 2012. The State, by counsel Laura Young, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

During a three-month period in the spring of 2010, petitioner recruited several men, including Charles Gibson, Lucas Buckhannon, and Russell Sheppard, to gather metal, wire, electrical components, and other materials from a mine site in Upshur County. Petitioner also instructed the men to cut up various pieces of equipment to access the metals inside. Once the materials were collected, petitioner sold them for scrap at a local salvage yard. Petitioner would then pay the men a small fee. Petitioner told the men that he had contracted with the owner of the materials, Paul Thomas, to sell the scrap and thereby clean up the mine site.

Late in the evening of June 1, 2010, a woman who lived near the mine site called the State Police to report unusual activity. An officer investigated and discovered Gibson, Buckhannon, and Sheppard leaving the site in a truck. In the bed of the truck were metal, copper wire, and cutting torches.

The next day, June 2, 2010, an investigating officer met with Paul Thomas, the owner of the materials, at the mine site. Thomas told the officer that (1) he had not given petitioner permission to remove materials from the site, (2) he had not entered into any contract with petitioner; (3) he knew petitioner but had not spoken to him for two or three years, and (4) based on photographs he had of the site, well over $1,000 of materials were missing and at least $2,500 of materials had been damaged. The officer then contacted Buckhannon and/or Sheppard and told them to return the materials they had removed from the site.

1

The next day, June 3, 2010, petitioner met with Buckhannon and Sheppard in the parking lot of a local convenience store. Buckhannon had some of the materials he and others had removed from the mine site in his truck so he could return them. After speaking with Buckhannon and Sheppard, petitioner took a roll of copper wire from Buckhannon's truck and placed it into the trunk of his (petitioner's) car. A surveillance camera at the convenience store captured the men's meeting and petitioner's actions. That same day, petitioner stopped by the State Police detachment to speak with the investigating officer, but found he was out of the office. Petitioner left a message with another officer that Paul Thomas had given him permission to retrieve junk from the mine site and sell it, but the owner of the mine, Mike Ross, had not given him permission to be on the site.

Petitioner was thereafter indicted for grand larceny in violation of West Virginia Code § 61-3-13(a); felony destruction of personal property in violation of West Virginia Code § 61-3-30(b); and fraudulent schemes in violation of West Virginia Code § 61-3-24d.

On May 27, 2011, petitioner made a request for discovery. The State responded on June 24, 2011, in part, by providing the investigating officer's report which included a list of the State's physical evidence. One of the items on this list was described as "One Compact Disc/CD containing surveillance of the incident described by Lucas Buckhannon at the Weston Pantry store on 06/03/10 involving the transfer of copper wire to [petitioner] John Cottrill." The compact disc was not directly provided to the defense because it was not capable of being copied. However, the State offered to meet with petitioner's counsel to review the video on April 6, 2012, five days before trial. Defense counsel failed to attend that meeting, but did view the video on April 10, 2012, one day before trial. After viewing the video, petitioner's counsel stipulated to its admission at trial.

At the start of petitioner's April 11, 2012, trial, the circuit court granted the State's motion to dismiss the fraudulent schemes count of petitioner's indictment. During the State's case-in-chief, it entered the surveillance video into evidence through the testimony of the investigating officer. Defense counsel did not object. However, on cross-examination, defense counsel repeatedly questioned the investigating officer about the relevance of the video.

On the second and last day of trial, the State moved to allow petitioner to enter into a "pretrial diversion" where petitioner would enter a conditional guilty plea, and be given two years to make restitution. If petitioner made restitution in that timeframe, his case would be dismissed. The circuit court denied the motion. Later that day and two hours into the jury's deliberations, the jurors asked the circuit court to provide the date on which the surveillance video was taken. The circuit court answered that the jury would have to rely on their recollection of the evidence presented at trial. About an hour later, the jury found petitioner guilty on both remaining counts.

At an April 20, 2012, post-trial hearing, petitioner moved the court for a new trial on two grounds: First, petitioner argued that the State failed to properly disclose character evidence pursuant to Rule 404(b) of the West Virginia Rules of Evidence (the convenience store surveillance video), and failed to request a hearing on the evidence. Petitioner's counsel claimed that, post-trial, he realized the video showed petitioner committing a bad act such as obstruction

of justice or tampering with evidence. Second, petitioner argued that the State failed to present sufficient evidence to support his conviction. Petitioner also asked the circuit court to reconsider its denial of the State's motion to allow petitioner to enter into the pretrial diversion agreement. The circuit court denied petitioner's motions.

By order entered June 11, 2012, the circuit court sentenced petitioner to not less than one nor more than ten years in prison for grand larceny, and not less than nor more than ten years in prison for felony destruction of property. The sentences were to run concurrently.

Petitioner now appeals the denial of his post-trial motions. Petitioner first argues that the circuit court erred in failing to set aside the jury's verdict where the State failed to properly disclose the convenience store surveillance video which petitioner characterizes as Rule 404(b) evidence. Petitioner claims that the State's offer to show defense counsel the video six days before trial did not offset the State's failure to provide the defense with a notice of Rule 404(b) evidence and to request a hearing on the evidence. Petitioner contends that if the State had given the defense proper notice of the video, defense counsel would have objected to it at trial. Petitioner also argues that defense counsel did not object to the video because, on cross-examination, the investigating officer refused to answer defense counsel's repeated questions regarding the relevance of the video. Petitioner claims that it was only after the jury asked about the video in the middle of its deliberations that defense counsel realized that the jury might consider petitioner's actions—taking the copper wire and placing it in his car—to be an uncharged bad act.

Petitioner argues that pursuant to *U.S. v. Hodge*, 354 F.3d 305 (4th Cir. 2004), before 404(b) evidence can be admitted, the State must show that it is relevant to an issue other than petitioner's character; it is necessary to prove an element of a charged offense; and it is reliable. Petitioner argues that the surveillance video fails the second and third elements of the *Hodge* test because the video did not prove an element of the crime, and was not reliable because the State failed to lay a proper foundation for its admission. As a result, the jurors were left to guess whether petitioner knew that the investigating officer had asked Buckhannon and/or Sheppard to return the property taken from the mine site. Petitioner argues that if the jurors assumed that petitioner did know the materials were to be returned, they would have concluded that he was performing a bad act by taking the roll of copper wire.

Petitioner has waived any argument regarding admission of the surveillance video at trial for the following reasons: First, the State notified petitioner about the existence of the surveillance video and what it purported to show approximately nine months prior to trial. Second, petitioner admits in his appellate brief that his counsel viewed the video prior to trial. Third, at the start of petitioner's trial, his counsel stipulated to the video's admission. Defense counsel again stipulated to the admission of the video when it was played for the jury. Fourth, defense counsel lodged no objection to the investigating officer's testimony about the video. Fifth, when the jury asked its question regarding when the video was recorded, defense counsel again did not object. "A litigant may not silently acquiesce to an alleged error . . . and then raise that error as a reason for reversal on appeal." Syl. Pt. 1, in part, *Maples v. W. Va. Dep't of Commerce, Div. of Parks and Recreation*, 197 W.Va. 318, 475 S.E.2d 410 (1996)." Syl. Pt. 4, *PNGI Charles Town Gaming, LLC v. Reynolds*, 229 W.Va. 123, 727 S.E.2d 799 (2011). Finally,

although "[t]he "plain error" doctrine grants appellate courts, in the interest of justice, the authority to notice error to which no objection has been made[,]" petitioner fails to make a plain error argument on appeal to this Court. *State v. Miller*, 194 W.Va. 3, 18, 459 S.E.2d 114, 129 (1995).

Petitioner's second assignment of error is that the circuit court erred in failing to set aside the jury's verdict where the State presented insufficient evidence to support petitioner's conviction. Petitioner argues that he maintained his innocence throughout trial, and the State presented no corroborating evidence that Paul Thomas told the truth when he testified that he had not given petitioner permission to remove scrap mental from the mine site. Petitioner also argues that defense witness Teddy Alderman cast aspersions on Paul Thomas's credibility when he testified that (1) he had served as a front-man for Paul Thomas in other mining operations because Thomas had been convicted of violating the Clean Water Act, and could not legally run a mine; (2) only "junk" was left on the mine-site and it had to be removed due to reclamation by the State; and (3) Paul Thomas had greatly overestimated the value of the property taken from the site.

Pursuant to Syllabus Point 1 of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), the Court reviews challenges to the sufficiency of evidence under the following standard:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Further, pursuant to Syllabus Point 3 of *Guthrie*:

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

When viewed in the light most favorable to the prosecution, we find the State presented sufficient evidence at trial for the jury to find petitioner guilty beyond a reasonable doubt of grand larceny and felony destruction of property. The evidence at trial included the following:

(1) The workers recruited by petitioner—Gibson, Buckhannon, and Sheppard—testified that petitioner told them he had a contract with Paul Thomas to remove property from the site, they were to gather and cut up material from the site to sell for scrap, and petitioner paid them for their services.

(2) The investigating officer testified that petitioner told him that Gibson, Buckhannon, and Sheppard were on the mine site at his direction.

(3) The state trooper who took petitioner's message on June 2, 2010, testified that petitioner admitted that he removed the property from the site and that he did not have permission from the owner of the mine, Mike Ross, to go on his property.

(4) Mike Ross testified that he had not given petitioner a key to unlock the gate at the mine site and that the locks at the site were always being cut. Mr. Ross also identified materials taken from the site and sold by petitioner as scrap.

(5) Paul Thomas testified that he did not give petitioner permission to remove or destroy material at the mine site and that he had not seen petitioner for two or three years. Thomas identified property that petitioner had sold for salvage or that had been destroyed at the site. Thomas also testified to the value of that property as being significantly greater that the statutory amounts necessary to sustain a conviction for grand larceny and felony destruction of property.

(6) A salvage yard employee identified receipts showing that petitioner had been paid $3,900 for the materials from the mine site.

As for the testimony of Teddy Alderman, which petitioner used to challenge Paul Thomas's credibility, "[c]redibility determinations are for a jury and not an appellate court. . . ." *Id.* The jury was instructed that they were the sole judges of the witnesses' credibility and, as such, found petitioner guilty of both counts. Therefore, we cannot say the circuit court erred in denying petitioner's motion to set aside the verdict for insufficient evidence.

Petitioner's third and final assignment of error is that the circuit court erred in refusing to allow the State to enter into a pretrial diversion agreement with petitioner pursuant to West Virginia Code § 61-11-22 where the State, petitioner, and the victim, Paul Thomas, agreed to the terms of the agreement. Petitioner argues that the prosecutor is the person charged by his office to represent the State's best interest, and the prosecutor in his case believed the agreement was in the State's best interest.

"'West Virginia Rules of Criminal Procedure, Rule 11, gives a trial court discretion to refuse a plea bargain.' Syllabus Point 5, *State v. Guthrie*, 173 W.Va. 290, 315 S.E.2d 397 (1984)." Syl. Pt. 2, *Myers v. Frazier*, 173 W.Va. 658, 319 S.E.2d 782 (1984). Further, "[t]here is no absolute right under either the West Virginia or the United States Constitutions to plea bargain. Therefore, a circuit court does not have to accept every constitutionally valid guilty plea merely because a defendant wishes so to plead." Syl. Pt. 2, *State ex rel. Brewer v. Starcher*, 195 W.Va. 185, 465 S.E.2d 185 (1995). Here, the circuit court found that substantial justice would

not be served by accepting the proposed conditional plea after jury selection and a full day of testimony. In light of the above standards and the circuit court's reasoning, we cannot say the circuit court abused its discretion in refusing to accept petitioner's conditional plea agreement.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 24, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II