734 S.E.2d 194

**STATE of West Virginia, Plaintiff Below, Respondent**

v.

**David L. WELCH, Defendant Below, Petitioner.**

No. 11–0459.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 25, 2012.

Decided Oct. 19, 2012.

Gregory L. Ayers, Deputy Public Defender, Charleston, WV, for Petitioner.

Carl L. Harris, Prosecuting Attorney, Roger L. Lambert, Assistant Prosecuting Attorney, Fayetteville, WV, for Respondent.

DAVIS, Justice:

This is a criminal appeal by David L. Welch, defendant below and petitioner herein (hereinafter "Mr. Welch"), from an order of the Circuit Court of Fayette County, sentencing him to life imprisonment without parole for first degree murder; ten to twenty-

five years imprisonment on each of nine counts of sexual assault in the second degree and one to five years imprisonment on each of three counts of sexual abuse in the first degree.[1] In this appeal, Mr. Welch assigned the following as error: (1) the trial judge committed error in rejecting a purported plea agreement; (2) the evidence was insufficient to convict him of felony murder; and (3) the trial judge improperly admitted a statement Mr. Welch made to the police. After listening to the arguments of the parties and a careful review of the briefs and record, we affirm.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The record in this case shows that on or about August 28, 2008, Roger Smith contacted the Fayette County Sheriff's Office to report that his mother, Linda Smith, was missing. The police immediately investigated the missing person report. It was learned that Ms. Smith had been dating Mr. Welch for about a year. The police also learned that Ms. Smith had been at Mr. Welch's residence on August 23 and 24, 2008, but had not been seen or heard from since that time. After an unsuccessful attempt to locate Mr. Welch, the police obtained a warrant to search his residence.

During the search of Mr. Welch's residence, the police found the dead body of Ms. Smith concealed in Mr. Welch's bedroom. Also during the search of the premises, the police discovered an index card that was signed with Mr. Welch's first name. The card stated: "To whom it May Concern: This was not intentional, but then nothing ever is. I'm going to find a rock to crawl under and die. I have nothing to look forward to but death now." The police additionally discovered a computer that eventually revealed video images of Mr. Welch

sexually assaulting Ms. Smith. The police ultimately were able to locate Mr. Welch in Virginia. Mr. Welch was extradited back to West Virginia in September 2008.

On September 9, 2009, a grand jury returned a fourteen count indictment against Mr. Welch. The charges included one count of murder during the course of a sexual assault, ten counts of second degree sexual assault, and three counts of sexual abuse in the first degree.

On or about April 12, 2010, the day before the trial, the prosecutor made a verbal plea offer to one of Mr. Welch's attorneys.[2] Under that offer, Mr. Welch would plead guilty to three counts of sexual assault in the second degree and the remaining charges would be dropped. The prosecutor allegedly informed defense counsel that the trial judge would be approached to see if he would be amenable to such a plea. The prosecutor contacted the trial judge and informed the judge of the possible plea. The trial court indicated that the proposed plea was not acceptable.[3]

On the day of trial, prior to jury selection, the trial court explained to the parties the reasons why he found the proposed plea offer unacceptable. The trial judge made clear that he did not participate in plea negotiations. The trial judge also invited the parties to submit a formal plea agreement to the court.

After the jury was selected, the trial court held a hearing on a written plea agreement the parties had entered into. This agreement required Mr. Welch to plead guilty to four counts of sexual assault in the second degree. During the hearing, the trial court questioned Mr. Welch at length regarding the plea and his understanding of the plea. At the conclusion of the hearing, Mr. Welch rejected the plea agreement and requested the case be tried by the jury.

---

1. The sentences were ordered to run consecutively.

2. Two attorneys were appointed to represent Mr. Welch. The attorney prosecuting this appeal did not represent Mr. Welch during the trial.

3. After the trial judge found the proposed plea unacceptable, the prosecutor made another verbal offer to defense counsel. In response to the second offer, defense counsel filed a writ of prohibition with this Court alleging that the trial judge had improperly participated in plea negotiations. This Court refused the petition.

Following, the conclusion of the state's case-in-chief, Mr. Welch called two witnesses but did not testify on his own behalf.[4] The jury returned a verdict convicting Mr. Welch of thirteen out of fourteen charges.[5] The trial court thereafter sentenced Mr. Welch, and this appeal followed.

## II.

## STANDARD OF REVIEW

This appeal presents standards of review that are unique to each of the issues presented. Therefore, the standard of review for each issue will be set out during the discussion of that issue.

## III

## DISCUSSION

On appeal to this Court, Mr. Welch assigns three errors to the trial court's rulings: (1) the trial judge erred in rejecting a purported plea agreement; (2) the evidence was insufficient to convict him of felony murder; and

4. Mr. Welch elected to waive the right to bifurcate the guilt and mercy phases of the murder charge.

5. The jury failed to reach a verdict on one of the second degree sexual assault charges.

6. Although Mr. Welch characterizes the plea proposal as a plea agreement, the prosecutor has indicated that no actual plea agreement was made with Mr. Welch. An actual plea agreement was contingent upon the trial court's opinion of the plea proposal.

7. Rule 11(e) sets out the procedure for a plea agreement in part as follows:
(e) Plea Agreement Procedure. (1) In general. The attorney for the state and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the state will do any of the following:
(A) Move for dismissal of other charges; or (B) Make a recommendation or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or (C) Agree that a specific sentence is the appropriate disposition of the case; or (D) Agree not to seek additional indictments or information for other known offenses arising out of past transactions.

(3) the trial judge improperly admitted into evidence a statement Mr. Welch made to the police. We separately consider each of these assigned errors.

### A. Rejection of Plea Proposal

■ Mr. Welch first argues that the trial court violated Rule 11 of the West Virginia Rules of Criminal Procedure by (1) not following the requirements of Rule 11 in considering the plea proposal, and (2) improperly participating in plea discussions. Both issues require that this Court examine the language of Rule 11. We have made clear that "questions of law and interpretations of . . . rules are subject to a de novo review." *State v. Hosby*, 220 W.Va. 560, 563, 648 S.E.2d 66, 69 (2007) (quoting Syl. pt. 1, in part, *State v. Duke*, 200 W.Va. 356, 489 S.E.2d 738 (1997)).

■ **1. Failure to follow Rule 11 in considering the plea proposal.**[6] Mr. Welch contends that the trial judge's summary rejection of the initial plea proposal was in violation of Rule 11.[7] Specifically, Mr. Welch

The court shall not participate in any such discussions.
(2) Notice of Such Agreement. If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered. If the agreement is of the type specified in subdivision (e)(1)(A), (C) or (D), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request, the defendant nevertheless has no right to withdraw the plea.
(3) Acceptance of a Plea Agreement. If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement.
(4) Rejection of a Plea Agreement. If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw the plea, and advise the defendant that if he or she persists in a plea of guilty or plea of nolo contendere, the disposition of the case may be less favorable to the

argues that the trial judge rejected the plea proposal without the proposal being presented in open court, and the trial court failed to elicit all the information required by Rule 11. Mr. Welch relies upon our decision in *State v. Sears*, 208 W.Va. 700, 542 S.E.2d 863 (2000), to argue that reversible error occurred in the instant case. We disagree.

In *Sears*, defense counsel contacted the prosecutor and informed him that the defendant agreed to accept a tendered plea offer. Defense counsel asked the prosecutor to attend a hearing with the trial court to see if the court would be amenable to accepting the plea agreement. During the hearing, defense counsel advised the court that the defendant had accepted the plea offer.[8] Defense counsel asked the court to allow the parties to appear before the court for the defendant's entry of a guilty plea in lieu of convening the following morning for a jury trial. The trial court rejected the request, stating " 'it really blows our whole scheme when we do this, letting this go late, because it encourages people to just plead later and later when we permit something like this and then it makes it harder for us to control our docket.' " *Sears*, 208 W.Va. at 703, 542 S.E.2d at 866. At the trial, the defendant was convicted by a jury of aggravated robbery and battery.

In the *Sears* appeal, the defendant argued that the trial court erred in refusing to consider the merits of the plea agreement merely because it was offered on the day before trial. This Court agreed with the defendant that the basis for the trial court's refusal to consider the merits of the plea was error. We held in Syllabus point 5 of *Sears* that, "[w]hen a criminal defendant and the prosecution reach a plea agreement, it is an abuse of discretion for the circuit court to summarily refuse to consider the substantive terms of the agreement solely because of the timing of the presentation of the agreement to the court."

*Sears* is distinguishable from the instant case in three respects. First, in the instant case the parties appeared to only have reached a plea proposal whereas in *Sears* the parties reached a plea agreement. Second, in the instant case the trial court was informed of the substance of the plea proposal; whereas in *Sears* the trial court refused to hear the substance of the plea agreement. Third, in the instant case the trial court stated that it rejected the proposal because of the seriousness of the charges; whereas in *Sears* the trial court rejected the plea agreement because of a purported local rule that barred plea agreements after pretrial hearings were held. Thus, it is clear that the principle of law developed in *Sears* has no application to the instant case.

In addition to rejecting Mr. Welch's reliance on *Sears*, we find that the conditions under which the trial court was approached with the plea proposal simply cannot invoke the procedural requirements of Rule 11. As previously noted, the prosecutor contends that the parties had not entered into a plea agreement. The parties were working toward a plea agreement that was contingent upon the trial court being receptive to the plea proposal. The prosecutor has pointed out that the proposal was not reduced to writing and did not address any of the litany of issues that a formal plea agreement would set out. This Court noted in *State v. Lopez*, 197 W.Va. 556, 568, 476 S.E.2d 227, 239 (1996), that "[a] close examination of Rule 11 indicates that it prescribes procedures to be followed where a defendant has actually entered a guilty plea pursuant to a plea bargain agreement."

In view of the foregoing, we hold that when the parties to a criminal proceeding agree that the trial court should be approached informally to determine whether the court would be amenable to a proposed plea agreement, the procedures outlined under Rule 11 of the West Virginia Rules of

---

defendant than that contemplated by the plea agreement.

(5) Time of Plea Agreement Procedure. Except for good cause shown, notification to the court of the existence of a plea agreement shall be given at the arraignment or at such other time, prior to trial, as may be fixed by the court.

**8.** The defendant was not present.

Criminal Procedure do not apply to respond to the informal inquiry.

Thus, it is clear from the facts of this case that the procedures of Rule 11 were not applicable when the trial court responded to the prosecutor's inquiry regarding the plea proposal.

**2. Improperly participating in plea discussions.** Mr. Welch next argues that the trial court improperly participated in plea negotiations when it rejected the plea proposal. This Court has observed that "Rule 11(e)(1) prohibits absolutely a trial court from all forms of judicial participation in or interference with the plea negotiation process." *State v. Sugg*, 193 W.Va. 388, 406, 456 S.E.2d 469, 487 (1995). As we explained in *Sugg*,

> [t]here are ... good reasons for the rule admitting of no exceptions. First and foremost, it serves to diminish the possibility of judicial coercion of a guilty plea, regardless of whether the coercion would cause an involuntary, unconstitutional plea. Second, such involvement is likely to impair the trial court's impartiality. A judge who suggests or encourages a particular plea bargain may feel a personal stake in the agreement and, therefore, may resent a defendant who rejects his advice. Third, judicial participation in plea discussions creates a misleading impression of the judge's role in the proceedings. As a result of his participation, the judge is no longer a judicial officer or a neutral arbiter. Rather, he becomes or seems to become an advocate for the resolution he suggests to the defendant. For these reasons, Rule 11(e)(1) draws a bright-line pro-

hibiting judicial participation in plea negotiations.

193 W.Va. at 407, 456 S.E.2d at 487–88.

We are disturbed by Mr. Welch assigning this issue as error.[9] Mr. Welch has failed to acknowledge or dispute the prosecutor's assertion that one of his trial attorneys knew that the trial court was going to be approached informally with the plea proposal and that defense counsel did not object.[10] Insofar as it appears that Mr. Welch, through counsel, knew that the trial judge was going to be approached informally, he cannot now complain about what, at most, would be invited error.[11] *See State v. Crabtree*, 198 W.Va. 620, 627, 482 S.E.2d 605, 612 (1996) ("Having induced an error, a party in a normal case may not at a later stage of the trial use the error to set aside its immediate and adverse consequences."). However, we need not apply the invited error doctrine here because the facts of this case do not establish that the trial court improperly participated in plea discussions.

The facts of this case show that the prosecutor approached the trial judge with a plea proposal. The trial court found the plea proposal was not acceptable in view of the seriousness of the charges. There is no evidence to show that the trial judge suggested the terms of an acceptable plea. *See State v. Sanders*, 209 W.Va. 367, 382, 549 S.E.2d 40, 55 (2001) (trial court offered sentence of thirty years imprisonment if defendant chose to plead guilty). Although this Court does not approve of the way in which the parties expressly or implicitly agreed to have the prosecutor approach the trial judge, we do not find the trial judge engaged in plea negotiations by answering a question the parties submitted to the court.[12]

---

9. We again note that appellate defense counsel was not the trial counsel.

10. The prosecutor indicated that this informal approach was used because the trial was going to take place the next day and there was concern with having the jury summoned the next day if the case could be disposed of under a plea.

11. If the appellate counsel believed that neither of Mr. Welch's trial counsel was aware that the prosecutor was going to approach the trial judge

with the plea proposal, the record in this appeal should have been vouched below with an affidavit(s) from trial counsel that addressed the issue. Without evidence casting doubt on the prosecutor's recollection of the circumstances in which the trial court was approached, we are forced to accept the prosecutor's representations.

12. The better practice in such a situation is for counsel for both parties to informally approach the trial court.

## B. Sufficiency of the Evidence

Mr. Welch next argues that the evidence was insufficient to convict him of felony murder, *i.e.*, that he killed the victim while sexually assaulting her. This Court's standard of review for a claim of insufficient of evidence is as follows:

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt....

Syl. pt. 3, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). This Court also has stated that

[t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl pt. 1, *Guthrie, id.* Based upon our review of the record, this Court finds no merit to Mr. Welch's argument that the evidence below was insufficient to support his conviction for felony murder.

Mr. Welch argues that the evidence at trial failed to show that the victim was killed during the sexual assault. Mr. Welch contends that the evidence shows that the victim could have died from a lethal amount of alcohol, drug overdose, or sleep apnea. It is also argued by Mr. Welch that the video of the sexual assault shows the victim was alive during the assault.

During the trial of this case, the prosecutor called Dr. Paul Mullen as a witness. Dr. Mullen performed an autopsy on the victim. Dr. Mullen testified at trial that, after performing tests, he ruled out drugs or alcohol as a cause of the victim's death. After reviewing video footage of the sexual assault, which included scenes of Mr. Welch inserting his penis and a pantyhose in the victim's mouth, Dr. Mullen concluded the victim died from asphyxiation.[13]

The prosecutor also presented testimony from another witness, Larry Bowles. Mr. Bowles was confined in a cell with Mr. Welch prior to the trial. Mr. Bowles informed the jury that Mr. Welch told him that the victim died after he put his hand over her mouth and nose. Additionally, the prosecutor called Officer J. Neal of the James City Police Department, James City, Virginia. Officer Neal testified that, during his interview of Mr. Welch in Virginia, he asked Mr. Welch what he thought was the cause of the victim's death. Mr. Welch replied that she died from asphyxiation.

Although Mr. Welch has presented various arguments as to why the jury should not have believed the evidence mentioned above, all of his arguments go to the credibility of the witnesses. "It is for the jury, not an appellate court, to determine credibility." *State v. McGuire*, 200 W.Va. 823, 835 n. 35, 490 S.E.2d 912, 924 n. 35 (1997). We are confident that the evidence in this case could convince a jury beyond a reasonable doubt that the victim was asphyxiated while being sexually assaulted by Mr. Welch.

## C. Admission of a Statement Made to the Police

The final issue raised by Mr. Welch involves the admission of a statement by a prosecution witness. Specifically, Mr. Welch has assigned error to a statement made by Officer Neal, which made known to the jury

---

**13.** The victim appeared to have been unconscious during the sexual assault.

that Mr. Welch was previously incarcerated. We have held that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998).

The statement made by Officer Neal and Mr. Welch's objection took place as follows:

PROSECUTOR: Did he [Mr. Welch] talk to you about what the circumstances were why he left West Virginia?

WITNESS: A little bit. He said he left in a hurry when he woke up. He said he woke up and his girlfriend was dead, then he was scared that—he knew he was going to have to go back to prison.

DEFENSE COUNSEL: Objection.

THE COURT: On what grounds? Well, come up here? Come up here.

(Court, counsel and defendant at benchside)

DEFENSE COUNSEL: Okay. He said he knew he was going to have to go back to prison. I don't want this to get out of control.

THE COURT: Me neither. That's as far as it's going to go, Carl?

PROSECUTOR: Yes. I didn't expect.

The record indicates that, prior to trial, the prosecutor agreed that no evidence of Mr. Welch's prior criminal record would be introduced. The prosecutor also stated that he would advise his witnesses not to mention Mr. Welch's prior criminal record. Mr. Welch now contends that the agreement was broken when Officer Neal mentioned his prior incarceration. In this appeal, Mr. Welch argues that, although he failed to move for a mistrial and failed to ask the court to instruct the jury to disregard the statement, this Court should review the issue under the plain error doctrine.

█ "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial

proceedings." Syl. pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

█ Upon a review of this matter, we do not find plain error. Even assuming that the witness's comment was improper, given the other evidence at trial, the comment did not affect Mr. Welch's substantial rights or seriously affect the fairness, integrity, or public reputation of the proceedings. Further, absent the comment, we believe that the evidence at trial was sufficient to support the convictions and the jury's refusal to grant mercy on the murder charge.

Mr. Welch has attempted to rely on the per curiam opinion in *State v. Ricketts*, 219 W.Va. 97, 632 S.E.2d 37 (2006). However, *Ricketts* is distinguishable. In that case, the trial judge made a pretrial ruling that precluded the State from introducing evidence of the defendant's prior drug conviction.[14] However, during the trial, the State intentionally questioned the defendant about his prior felony conviction. The defendant objected. The trial court overruled the objection and allowed the State to continue questioning the defendant about the prior conviction. In the appeal, this Court reversed the conviction and granted a new trial. In doing so, we indicated that, "in light of its previous ruling on the matter, the court's decision to allow the evidence of Ricketts' prior conviction over the objection of the defense was certainly 'arbitrary and irrational' and represented an abuse of discretion." *Ricketts*, 219 W.Va. at 101–02, 632 S.E.2d at 41–42.

Unlike the trial judge in *Ricketts*, the trial court in the instant proceeding prohibited the prosecutor from pursuing any further questioning regarding Mr. Welch's criminal past. Moreover, unlike *Ricketts*, there was no evidence that the prosecutor in the instant case intentionally sought to introduce evidence that the parties agreed would not be introduced. Thus, we find no reversible error on this ground.

## IV.

## CONCLUSION

In view of the foregoing, the trial court's order sentencing Mr. Welch to life imprison-

---

**14.** The defendant in *Ricketts* was convicted of misdemeanor battery.

ment without parole for first degree murder; ten to twenty-five years imprisonment on each of nine counts of sexual assault in the second degree; and one to five years imprisonment on each of three counts of sexual abuse in the first degree is affirmed.

Affirmed.