# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Marcus McKinley,**
**Petitioner Below, Petitioner**

**FILED**
**June 25, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)  No. 19-0191** (Mercer County 15-C-42-MW)

**Donnie Ames, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**


## MEMORANDUM DECISION


Petitioner Marcus McKinley, by counsel E. Ward Morgan, appeals the February 22, 2019, Order of the Circuit Court of Mercer County denying his motion to alter or amend judgment related to the circuit court's denial of his petition for a writ of habeas corpus. Respondent, Donnie Ames, Superintendent, Mt. Olive Correctional Complex, by counsel Andrea Nease-Proper, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner began dating Ayanna Patton ("the victim") around 2008. The relationship was very violent and resulted in numerous calls to police for domestic violence incidents. In May of 2011, the victim had a protective order in place that forbade petitioner from having any contact with her. Despite the protective order, the victim met with petitioner at a restaurant on May 18, 2011. The two talked, and the victim returned to her apartment alone. Petitioner then obtained the victim's home address from a friend and went to her apartment, where he spent the night. When petitioner awoke early the following morning, he began reading text messages on the victim's phone between her and another man. Petitioner became upset, retrieved a gun that he carried, and shot the victim five times. She died at the scene.

After killing the victim, petitioner fled to North Carolina. While in the process of fleeing, petitioner used a cell phone, owned by the victim, to contact several people and made incriminating statements indicating that he killed the victim. North Carolina police tracked petitioner using signals from the victim's phone and located him. While being transported back to West Virginia,

1

petitioner gave incriminating statements to the officers driving him, indicating that he killed the victim.

On February 15, 2012, petitioner was indicted for first-degree murder. The trial court held a suppression hearing on October 12, 2012, regarding the statements petitioner made to the police officers who escorted him back to West Virginia. A plea bargain was also discussed wherein petitioner offered to plead guilty to second-degree murder, and the prosecution offered first-degree murder with mercy. On October 25, 2012, the trial court held a hearing on the State's motion to bifurcate petitioner's trial. Petitioner's counsel objected to the motion, and the trial court denied the State's motion.

Upon discovering that he had a conflict of interest in the case, the prosecution called the trial judge and petitioner's counsel to discuss his possible disqualification.[1] During that conversation, the proposed plea agreement was also discussed. The trial judge asked for the family's opinion on the plea offer. After learning that the family disagreed with anything short of the "electric chair," the trial judge informed the parties that he would reject the proposed plea deal for first-degree murder with mercy. A formal hearing regarding a plea agreement was held, and petitioner was present in person. The plea was put on the record and officially rejected by the court. The prosecuting attorney was disqualified the following day and a special prosecutor was appointed. Petitioner's trial began on March 19, 2013. After several days of testimony, petitioner was found guilty of first-degree murder with no recommendation of mercy. Petitioner argued during a post-conviction hearing that the trial court did not properly evaluate his plea offer of second-degree murder. The court stated that the prosecuting attorney who offered the plea deal of first-degree murder with mercy was disqualified from the case, thereby nullifying the deal. Further, the court stated that the victim's family had objected to the plea offer. Petitioner filed a direct appeal of his conviction to this Court, which affirmed his conviction for first-degree murder without mercy. *See State v. McKinley,* 234 W. Va. 143, 764 S.E.2d 303 (2014). On April 12, 2013, the trial court denied petitioner's motion to set aside the verdict and motion for a new trial.

Petitioner was appointed new counsel who filed an amended petition for a writ of habeas corpus on January 10, 2017, alleging twenty-two assignments of error. The habeas court held an omnibus hearing on January 4, 2018. Relevant to the instant appeal, petitioner argued that his trial counsel was ineffective for objecting to the State's motion to bifurcate the trial. Petitioner's trial counsel objected to the motion to bifurcate the trial because bifurcation would allow the State to introduce evidence of additional acts of domestic violence between petitioner and the victim, as well as petitioner's prior felony conviction for gun violence. The trial court agreed with petitioner's trial counsel that bifurcation was unnecessary. Petitioner also argued that his trial counsel was ineffective in failing to present the alternative defense of extreme emotional distress. The habeas court found that the trial court properly granted the State's motion to exclude the expert testimony of petitioner's retained expert Bobby Miller, M.D., who performed a forensic psychiatric evaluation of petitioner. The habeas court found that Dr. Miller acknowledged that petitioner had no mental disease or defect at the time he committed the crime. Petitioner next argued that his constitutional rights were violated when his trial counsel failed to ensure petitioner's presence

---

[1]The prosecutor had previously represented petitioner as defense counsel in another criminal case.

during plea negotiations. The habeas court found that the "negotiations" to which petitioner referred were neither a plea negotiation nor a critical stage where petitioner's right to a fair trial would have been affected. As such, the habeas court determined that petitioner's presence during the conversation was unnecessary. The habeas court denied petitioner's petition for a writ of habeas corpus on March 9, 2018. Thereafter, petitioner filed a motion to alter or amend judgment. On February 22, 2019, the habeas court denied petitioner's motion to alter or amend judgment, finding that petitioner simply re-argued factual assertions made in his initial pre-trial motions and his amended petition for a writ of habeas corpus. Petitioner appeals the February 22, 2019, order denying his motion to alter or amend judgment.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W. Va. 375, 701 S.E.2d 97 (2009).

The standard of review applicable to an appeal from motion to alter or amend a judgment "is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed". Syl. Pt. 1, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W. Va. 430, 513 S.E.2d 657 (1998).

Petitioner first argues that the habeas court erred in denying his motion to alter or amend judgment as the court clearly erred in denying his petition for a writ of habeas corpus alleging ineffective assistance of counsel. In his petition for habeas relief, petitioner argued that his trial counsel was ineffective for three reasons: trial counsel objected to the State's motion to bifurcate the trial, trial counsel failed to present the alternative defense of extreme emotional disturbance, and trial counsel discussed a plea offer with the trial judge and prosecutor without petitioner's participation or knowledge.[2]

Claims of ineffective assistance of counsel are governed by the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which states that, in order to prevail on a claim of ineffective assistance of counsel, petitioner must show that "(1) [c]ounsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syl. Pt. 5, in part, *State v. Miller,* 194 W. Va. 3, 459 S.E.2d 114 (1995). Furthermore,

---

[2]Petitioner alleged four assignments of error in his petition for appeal. Because three of those assignments of error involve ineffective assistance of counsel, they have been combined herein.

[i]n reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

*Id.* at 6, 459 S.E.2d at 117. This Court "always . . . presume[s] strongly that counsel's performance was reasonable and adequate[,]" and

[t]he test of ineffectiveness has little or nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We only ask whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at the time, in fact, worked adequately.

*Id.* at 16, 459 S.E.2d at 127. Certainly, with the benefit of hindsight, "one always may identify shortcomings, but perfection is not the standard for ineffective assistance of counsel." *Id.* at 17, 459 S.E.2d at 128.

Petitioner first contends that his trial counsel was ineffective in objecting to bifurcation of the trial. Petitioner asserts that even if he was precluded from presenting the defense of extreme emotional disturbance at trial, he could have presented the mitigating defense during the mercy phase. Petitioner relies on *State v. LaRock,* 196 W. Va. 294, 470 S.E.2d 613 (1996), in which this Court held that a trial court has the discretion to bifurcate a trial in any case where the jury is required to make a recommendation regarding mercy. Petitioner argues that he was diagnosed with extreme emotional disturbance prior to the sentencing phase of his trial and if the trial had been bifurcated, Dr. Miller could have testified at sentencing regarding petitioner's state of mind at the time he committed the crime. Petitioner states that if trial counsel had not objected to bifurcation of the trial, the results of the proceedings would have been different.

Based on our review of the record, we find that petitioner fails to show that trial counsel's performance was deficient under an objective standard of reasonableness with regard to objecting to bifurcation of the trial. At the omnibus hearing, petitioner's trial counsel testified that he has practiced criminal law for forty years, and he made the decision to object to bifurcation of the trial in order to prevent evidence of petitioner's prior crimes from being admitted during the mercy phase of a bifurcated trial. In its April 12, 2013, order denying petitioner's motions to set aside the verdict and for a new trial, the trial court expressly noted that the State intended to introduce petitioner's prior felony conviction for gun violence as well as two other matters involving domestic violence during the mercy phase of trial if the court granted a motion to bifurcate.[3] Although petitioner asserts that if the trial had been bifurcated, he could have presented the

---

[3]The State also sought to introduce evidence of additional instances of domestic violence between petitioner and the victim.

testimony of Dr. Miller in support of mitigation, we note that Dr. Miller's testimony was ruled inadmissible at trial, and there is no evidence that Dr. Miller would have been permitted to testify at sentencing. Petitioner failed to show that the results of the proceeding would have been different had the trial been bifurcated. Accordingly, we find that the court did not err in concluding that trial counsel was not ineffective.

Next, petitioner contends that his trial counsel was ineffective in failing to present the alternative defense of extreme emotional disturbance. Initially, petitioner's trial counsel filed a notice of intent to present diminished capacity as an affirmative defense, relying upon the opinion of Dr. Miller. Dr. Miller opined that petitioner did not suffer from a mental disease or defect but did suffer from extreme emotional disturbance when he committed the crime. Therefore, Dr. Miller stated that petitioner may have lacked the ability to premeditate his crime. However, because Dr. Miller opined that petitioner had no mental disease or defect, the trial court granted the State's motion to exclude Dr. Miller's testimony. Petitioner asserts that the defense of extreme emotional disturbance does not require a showing of mental disease or defect, and, therefore, trial counsel should have presented it as a defense. Petitioner argues that trial counsel had a duty to investigate, develop, and defend petitioner, which included presenting the legitimate defense of extreme emotional disturbance. Petitioner asserts, that there is a reasonable possibility that if his trial counsel had presented this defense, the outcome of the trial would have been different as the essential element of premeditation could not have been proven, and he would not have been convicted of first-degree murder.[4]

We disagree with petitioner and find that he failed to satisfy the first prong of the *Strickland/Miller* test. Petitioner contends that he was incapable of premeditation at the time of the murder due to extreme emotional disturbance, and also contends that his trial counsel was ineffective for failing to establish this defense; however, these very issues were fundamentally addressed on direct appeal and this Court found no error. In *McKinley*, this Court determined that the trial court did not abuse its discretion in prohibiting petitioner's expert, Dr. Miller, from presenting evidence of extreme emotional disturbance to establish the defense of diminished capacity. *State v. McKinley,* 234 W. Va. 143, 764 S.E.2d 303 (2014). The record on appeal was replete with evidence showing that petitioner premeditated his crime. Therefore, even if trial counsel had put forth the defense of extreme emotional disturbance, petitioner failed to show that the results of the trial would have been different.

Lastly, petitioner contends that his Sixth Amendment right to effective counsel was denied when, during a telephone conference, his lawyer discussed a plea offer with the trial judge and prosecutor without petitioner's participation or knowledge. It is undisputed that a plea bargain was discussed early in the case wherein petitioner offered to plead guilty to second-degree murder and the prosecution offered first-degree murder with mercy. While plea negotiations were still pending, the prosecutor discovered that his office had a conflict of interest in the case. He contacted petitioner's trial counsel and the judge to inform them that his office should be disqualified from the case. During that conversation, the judge inquired as to what the victim's family thought of the proposed plea agreement. Upon being informed that the family disagreed with anything short of petitioner's execution as punishment for his crime, the judge informed the parties that he would

---

[4]*See* W. Va. Code § 61-2-1.

reject a plea for second degree murder. Petitioner now argues that his trial counsel's failure to object to the trial court's rejection of the proposed plea agreement unconstitutionally prejudiced petitioner. Petitioner argues that after the proposed plea of second-degree murder was rejected by the trial court, he would have accepted the prosecution's original plea offer of first-degree murder with mercy, but his counsel did not communicate petitioner's acceptance of the original plea offer.

We have held that "[t]he general right of a criminal defendant to be present during courtroom proceedings is addressed through the interpretation of the state constitution, a Court rule and statute. Consequently, our review of the issue . . . is plenary." *State v. Sites*, 241 W. Va. 430, 443, 825 S.E.2d 758, 771 (2019). This Court has long recognized that "Section 14 of Article III of the West Virginia Constitution, as well as the Fifth and Sixth Amendments to the United States Constitution, establishes a criminal defendant's right to be present at all critical stages of a trial." *State v. Crabtree*, 198 W. Va. 620, 629, 482 S.E.2d 605, 614 (1996).

In syllabus point 6 of *State v. Boyd*, 160 W. Va. 234, 233 S.E.2d 710 (1977), this Court acknowledged that "[t]he defendant has a right under Article III, Section 14 of the *West Virginia Constitution* to be present at all critical stages in the criminal proceeding; and when he is not, the State is required to prove beyond a reasonable doubt that what transpired in his absence was harmless." This Court has identified "critical stage[s] of a criminal proceeding" and ones "where the defendant's right to a fair trial will be affected," syl. pt. 2, in part, *State v. Tiller*, 168 W. Va. 522, 285 S.E.2d 371 (1981), or "where anything may be done which affects the accused[.]" Syl. Pt. 1, in part, *id*.

We have further held that

[w]hen the parties to a criminal proceeding agree that the trial court should be approached informally to determine whether the court would be amenable to a proposed plea agreement, the procedures outlined under Rule 11 of the West Virginia Rules of Criminal Procedure do not apply to respond to the informal inquiry.

Syl. Pt. 1, *State v. Welch,* 229 W. Va. 647, 734 S.E.2d 194 (2012).

We find that the limited conversation between the court, petitioner's counsel, and the prosecution regarding a possible conflict of interest in the prosecution's office was not a formal plea negotiation, and in fact, it was not until later, with petitioner present, that the proposed plea was put on the record and rejected by the court. Petitioner had no constitutional right to be present during the informal conversation between trial counsel, the prosecution, and the trial judge. We therefore find trial counsel was not ineffective for failing to ensure petitioner's presence.

In his second assignment of error, petitioner argues that the habeas court committed reversible error in denying his amended petition for a writ of habeas corpus because the court failed to make specific findings and conclusions regarding the multiple grounds raised in both the petition and the *Losh* list.[5] Specifically, petitioner argues that the habeas court failed to address the

---

[5]*Losh v. McKenzie*, 166 W. Va. 762, 277 S.E.2d 606 (1981).

6

following grounds: mental competency at the time of the crime, incompetency at the time of the offense, constitutional errors in evidentiary rulings, sufficiency of the evidence, prejudicial statements made by the prosecutor, and a more severe sentence than expected.

This Court has previously held that

West Virginia Code section 53-4A-7(c) (1994) requires a circuit court denying or granting relief in a habeas corpus proceeding to make specific findings of fact and conclusions of law relating to each contention advanced by the petitioner, and to state the grounds upon which the matter was determined.

*State ex rel. Watson v. Hill*, 201 W. Va. at 202, 488 S.E.2d at 477, Syl. Pt. 1.

We find no merit in petitioner's argument. Here, the habeas court specifically addressed, in its March 8, 2018, order, each of the grounds raised by petitioner, even denoting each ground under a different subheading. The court performed a thorough analysis of the issue of mental competency and determined that petitioner failed to show that he lacked mental competency at the time he committed the crime and at trial. Regarding constitutional errors in evidentiary rulings, the court determined  that exclusion of Dr. Miller's testimony was proper and that petitioner failed to identify any other specific constitutional provision which was allegedly infringed upon.[6] The court also addressed the issue of sufficiency of the evidence and concluded that petitioner "did not offer anything to challenge the sufficiency of the evidence." As to the issue of allegedly prejudicial statements made by the prosecutor during cross examination and closing arguments, the court determined that petitioner failed to offer any evidence in support of such claims or even to address the factors set forth in *State v. Sugg*, 193 W. Va. 388, 456 S.E.2d 469 (1995), for determining whether a prosecutor's statements were prejudicial. Those factors are

(1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

Finally, the court addressed the issue of petitioner receiving a more severe sentence than expected and determined that petitioner's sentence was fair, as the jury found him guilty of first-degree murder without a recommendation of mercy. In discussing petitioner's sentence, the habeas court relied on *State v. Adams,* 211 W. Va. 231, 565 S.E.2d 353 (2002), which sets forth the two-part test to determine if a sentence is excessive. The court reasoned that petitioner's sentence did not "shock the conscience of the court and society." The court also considered "the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same

---

[6]While petitioner alleged "constitutional errors" in his amended habeas, he was not specific as to the actual error. The lower court determined the only such error that would apply was the error related to the exclusion of the testimony of Dr. Miller.

7

jurisdiction." *Id.* Accordingly, contrary to petitioner's unsupported assertions, it is clear that the habeas court made detailed findings regarding each of grounds petitioner contends were not addressed.

For the foregoing reasons, we affirm the circuit court's February 22, 2019, denial of petitioner's motion to alter or amend judgment of the habeas court's denial of his petition for a writ of habeas corpus.

Affirmed.

**ISSUED:** June 25, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison