IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2024 Term

_____

No. 22-672

_____

FILED

**April 25, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent,

v.

RACHEL LOUISE ADKINS,
Defendant Below, Petitioner.

_____

Appeal from the Circuit Court of Cabell County
The Honorable Alfred E. Ferguson, Judge
Case No. 15-F-302

REVERSED AND REMANDED WITH DIRECTIONS

_____

Submitted:  February 21, 2024
Filed:  April 25, 2024

Matthew Brummond, Esq.
Public Defender Services
Charleston, West Virginia
Counsel for Petitioner

Patrick Morrisey, Esq.
Attorney General
Andrea Nease Proper, Esq.
Deputy Attorney General
Charleston, West Virginia
Counsel for Respondent

JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "This Court's application of the plain error rule in a criminal prosecution is not dependent upon a defendant asking the Court to invoke the rule. We may, sua sponte, in the interest of justice, notice plain error." Syllabus Point 1, *State v. Myers*, 204 W. Va. 449, 513 S.E.2d 676 (1998).

2.      "'To trigger application of the "plain error" doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings.' Syllabus point 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995)." Syllabus Point 3, *State v. Welch*, 229 W. Va. 647, 734 S.E.2d 194 (2012).

WALKER, Justice:

In February 2022, Petitioner Rachel Louise Adkins entered a *Kennedy*[1] plea in the Circuit Court of Cabell County to one felony count of driving under the influence causing death. When the court sentenced her to not less than two nor more than ten years of incarceration, Ms. Adkins objected and stated that the only reason she entered the plea was because the court promised to sentence her to home confinement—during off-the-record plea discussions with the parties. On appeal, Ms. Adkins asks this Court to "hold the lower court to its deal or, in the alternative, allow her to withdraw her plea." Concluding the circuit court erred by participating in plea discussions in violation of Rule 11 of the West Virginia Rules of Criminal Procedure, we reverse the judgment and remand to allow Ms. Adkins to withdraw her plea.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 10, 2014, Ms. Adkins was involved in a high-speed car accident with another vehicle on Route 10 in Cabell County. The driver of the other vehicle, who suffered extensive injuries, later died and two of his passengers were injured. Ms. Adkins's ten-year-old daughter was also injured in the car accident. In 2015, a grand

---

[1] *See* Syl. Pt. 1, *Kennedy v. Frazier,* 178 W. Va. 10, 357 S.E.2d 43 (1987) ("An accused may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him."); *see also North Carolina v. Alford*, 400 U.S. 25 (1970).

1

jury indicted Ms. Adkins on one felony count of DUI causing death, as well as four misdemeanor charges—three counts of DUI causing bodily injury and one count of DUI with an unemancipated minor.

Ms. Adkins's criminal charges remained unresolved for years. In her brief to this Court, Ms. Adkins explained that "[a] sticking point in negotiations was that the State would not, on the record, offer a binding plea to home confinement. Conversely, [Ms. Adkins's] daughter begged her not to accept any deal that could result in prison. Between this fundamental disagreement and the lawyers' personality conflict, the case stalled."[2]

On January 5, 2022, members of the prosecutor's office and public defender's office who were not assigned to Ms. Adkins's case approached the judge to resolve the impasse, and participated in off-the-record plea discussions with the court. The following day, the parties appeared for a pretrial conference. On the record, the court acknowledged the prior day's meeting and acknowledged, "I talked with them and I told them what my opinion was. And they were to go back to the defendant and talk to her." The court then continued the hearing to give Ms. Adkins "time to consider the offer in this case."

---

[2] Footnotes omitted. Ms. Adkins does not raise a speedy trial issue in this appeal.

On February 8, 2022, the prosecutor e-mailed Ms. Adkins's counsel offering a summary of the prior conversations:

> As we previously discussed in a phone conversation with Mr. Reynolds,[3] I agreed to a Kennedy plea to DUI causing death with the other charges in the indictment being dismissed. I also agreed to a maximum of 1 year on parole once granted (this would presumably be after 2 years). Judge Ferguson indicated he would allow your client to serve a 2-10 year sentence on home confinement if she enters this plea. So, just to be clear, your clients 2-10 year sentence on home confinement will not be the result of an agreement she made with the State.[4]

After Ms. Adkins accepted the offer, the parties appeared for a plea hearing on February 9, 2022. Ms. Adkins's counsel placed the terms of the agreement with the State on the record; Ms. Adkins would enter a *Kennedy* plea to DUI causing death and, in exchange, the State would dismiss four misdemeanor charges. But counsel did not disclose what the court allegedly said it would do at sentencing. Rather, counsel said that "sentencing will be by the [c]ourt" and that the State would stand silent at sentencing. During the plea colloquy, Ms. Adkins confirmed that her counsel's representations of the terms of the agreement were accurate and that no one had made "other promises or threats" to entice her to plead guilty. She acknowledged that the penalty for DUI causing death was

---

[3] Owens Reynolds, assistant prosecuting attorney.

[4] Errors in original.

"two to ten,"[5] but no one mentioned prison as an option. The court accepted Ms. Adkins's *Kennedy* plea.

At the April 1, 2022, sentencing hearing, Ms. Adkins's counsel argued for home confinement and credit for time served. Before pronouncing the sentence, the circuit court made several statements, including, "So I met with those attorneys. And I gave them my opinions. We discussed some things. And I indicated to them what I might do." The court explained that it had received Ms. Adkins's presentence investigation report, which detailed positive drug screens, her failure to report to probation in 2019, and driving violations following her indictment. The court said, "[W]hen I was talking to the lawyers about how we might settle this case—I just discovered in this report things I did not know." The court continued, "I did not fully have all of the facts when I told them what I thought I would do as far as the sentencing in this case."

The circuit court declined to give Ms. Adkins credit for the time she was on home confinement, further explaining that "after thinking about all the talking I had done with the lawyers and everything, I was of the opinion that whatever I told them that I might do was not really a valid contract." The court then sentenced Ms. Adkins to not less than

---

[5] *See* W. Va. Code § 17C-5-2(a)(2) and (3) (2010) (providing statutory penalty for DUI causing death as "imprison[ment] in a state correctional facility for not less than two years nor more than ten years[.]").

two nor more than ten years of incarceration. Ms. Adkins's counsel objected, and the following exchange took place:

> MR. HENDERSON [Ms. Adkins's counsel]: Your Honor, we were told by the [c]ourt—the only reason she entered the plea against my advice is—several times I said, Judge told us this is what he's going to do.
>
> THE COURT: That's why I told you I was putting on the record what I found[.] . . . When I told you that or whatever I told you, I did not have—you all asked for a pre-sentence report. I didn't know anything about her personally. . . .
>
> MR. HENDERSON: But the only reason she entered the plea is she was assured at that time that she—
>
> THE COURT: That's why I talked about the offer and acceptance and the consideration, the meeting of the minds. I strongly looked to see was I actually bound by what I told you all, and I came up with the opinion that I am not—that I'm not. . . . I went back to the court reporter and I said, read to me what I asked you all was the agreement at the time. The agreement was—she told—she read it back to me. There was nothing else in there.
>
> MR. HENDERSON: Your Honor, we had the conversations in chambers. . . . The State didn't want . . . They didn't want it on the record and I agreed to that solely because we were told what the disposition would be. My client—not based on an offer, based on the [c]ourt telling me.
>
> THE COURT: I did not have all the facts.

When Ms. Adkins's counsel moved to set aside the plea, the circuit court responded that he should file a motion. The court also addressed the issue at hand:

> [W]e've got to remember, somebody has died in this case. You know? I got my eyes away from that even because this case

5

was going on so long. I was just trying to get the case resolved, and I overstepped my bounds. If I did that, I overstepped my bounds.

Ms. Adkins's counsel asked the court what he is "supposed to do . . . when a court tells me, this is what I'll do[.]" The court instructed counsel to file a motion and said "you don't know how much time I've thought about this case. And I know what you're talking about. But I realized I could not sleep at night if I let her just serve it on home confinement because of all the violations she had in the past."

Ms. Adkins filed a motion under Rule 35 of the West Virginia Rules of Criminal Procedure, detailing the meeting with the court and what she characterized as the "[c]ourt's plea offer[.]" Ms. Adkins argued that she would not have pled guilty "had there not been a guarantee of [h]ome [c]onfinement as a sentence." Ms. Adkins requested that the court reconsider its sentence and allow her to serve the time on home confinement, in accordance with "its offer." At the hearing on the Rule 35 motion, the circuit court did not dispute Ms. Adkins's representations about the court engaging in plea discussions. Rather, the court reiterated that it "still feel[s] like [it] did not violate any agreement" and that it was "totally caught by surprise" by the presentence report. The court denied Ms. Adkins's Rule 35 motion.

Ms. Adkins then filed a motion to withdraw her plea. She recounted details of the plea discussions with the court and, citing Rule 11(e)(1) of the West Virginia Rules

of Criminal Procedure, characterized her plea as an "illegal" one that "must be vacated" due to the court's impermissible involvement. Ms. Adkins reiterated that she would not have accepted the offer had the court not promised to sentence her to home confinement. At the hearing on Ms. Adkins's motion to withdraw her plea, the circuit court did not dispute Ms. Adkins's representations regarding its participation in plea discussions. When addressing her contention that the plea was "illegal," the court noted that "that meeting was not arranged by the [c]ourt but by counsel." The court stated that the terms of the agreement were placed on the record at the sentencing hearing, that Ms. Adkins confirmed the terms, and that she denied that anyone had made other threats or promises to induce her plea. The court denied Ms. Adkins's motion and resentenced her for purposes of an appeal. These rulings were memorialized in an order entered July 22, 2022.

## II. STANDARD OF REVIEW

Ms. Adkins maintains that she entered a *Kennedy* plea to DUI causing death only because the circuit court promised to sentence her to home confinement during off-the-record plea discussions. Although she does not raise the circuit court's participation in plea agreement discussions as grounds for this appeal, "[t]his Court's application of the plain error rule in a criminal prosecution is not dependent upon a defendant asking the Court to invoke the rule. We may, sua sponte, in the interest of justice, notice plain error."[6] The circuit court, by its own admission, took part in discussions in an attempt "to get the

---

[6] Syl. Pt. 1, *State v. Myers*, 204 W. Va. 449, 513 S.E.2d 676 (1998).

7

case resolved," prior to a plea agreement being reached by the parties. As discussed below, a court's participation in plea discussions is prohibited under Rule 11 of the West Virginia Rules of Criminal Procedure. So, the determinative issue is whether this rule violation constitutes plain error under the facts presented. "'To trigger application of the "plain error" doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings.'"[7] Our review is de novo.[8]

## III. ANALYSIS

Ms. Adkins represents that the circuit court engaged in plea negotiations, promised to sentence her to home confinement, but broke that promise when it sentenced her to prison. Ms. Adkins argues that because she and the State relied on the court's promise in reaching an agreement, which she characterizes as a binding plea, specific performance is the appropriate remedy. Alternatively, Ms. Adkins requests that this case be reversed and remanded to allow her to withdraw her plea. In response, the State claims that there was no binding plea agreement. Rather, the State contends that it abided by the plea agreement that was placed in the record; in exchange for Ms. Adkins entering a *Kennedy* plea to DUI causing death, the State dismissed four misdemeanor charges and

---

[7] Syl. Pt. 3, *State v. Welch*, 229 W. Va. 647, 734 S.E.2d 194 (2012) (quoting Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995)).

[8] Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

stood silent at sentencing. For this reason, the State argues that Ms. Adkins is not entitled to relief.[9]

Ms. Adkins principally relies on *State ex rel. Brewer v. Starcher*[10] as support for her request that we reverse and remand for specific performance of the terms of the plea agreement that was reached with the circuit court's assistance. But her reliance on *Brewer* is misplaced; in that case, the circuit court accepted a binding plea[11] at the sentencing hearing, but later modified the terms, unilaterally, in its sentencing order.[12] Here, there was no binding plea agreement between Ms. Adkins and the State because the State allegedly would not go on the record in support of Ms. Adkins's request for home confinement. So, we decline Ms. Adkins's request for specific performance. But we reverse the circuit court's order and remand this case so that Ms. Adkins may withdraw her

---

[9] Ms. Adkins replies that if this was a nonbinding plea, then the circuit court still violated Rule 11 because it failed to advise her that she had no right to withdraw her plea if the court did not accept her request for home confinement. W. Va. R. Crim. P. 11(e)(2); *see State v. Cabell*, 176 W. Va. 272, 342 S.E.2d 240 (1986) (describing the requirements of Rule 11(e)(2) as "mandatory" and reversing the defendant's convictions and remanding with instructions to allow the defendant to plead anew or grant specific performance due to the court's failure to advise the defendant that he had no right to withdraw the plea). Because we grant relief based on the circuit court's participation in plea discussions, it is unnecessary to address this issue.

[10] 195 W. Va. 185, 465 S.E.2d 185 (1995).

[11] W. Va. R. Crim. Pro. 11(e)(1)(C); *see State v. Shrader*, 234 W. Va. 381, 389 n.18, 765 S.E.2d 270, 278 n.18 (2014) (stating that under Rule 11(e)(1)(C), a plea becomes binding when the parties agree to a specific sentence).

[12] *Brewer*, 195 W. Va. at 190, 465 S.E.2d at 190.

guilty plea. As explained below, the court's participation in plea negotiations was plain error undermining the fundamental fairness of these proceedings.

Rule 11 of the West Virginia Rules of Criminal Procedure governs guilty pleas, and among other things explicitly prohibits judicial participation in plea discussions with criminal defendants.[13] Rule 11 provides that "[t]he attorney for the state and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement[.]"[14] But the rule plainly states that "[t]he court shall not participate in any such discussions."[15] Rule 11 of the Federal Rules of Criminal Procedure contains similar language.[16] A judge's role is limited to acceptance or rejection of the plea agreement after a thorough review of the relevant factors. Courts have widely recognized that Rule 11 absolutely prohibits all forms of judicial participation in or interference with the plea negotiation process.[17] In *State v. Sugg*,[18] we explained that this prohibition serves three important interests: it diminishes "the possibility of judicial

---

[13] W. Va. R. Crim. P. 11(e)(1).

[14] *Id*.

[15] *Id*.

[16] *See* Fed. R. Crim. P. 11(c)(1) (providing that "[a]n attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement," but "[t]he court must not participate in these discussions.").

[17] *United States v. Miles*, 10 F.3d 1135, 1139 (5th Cir. 1993).

[18] 193 W. Va. 388, 456 S.E.2d 469 (1995).

coercion of a guilty plea[,]" it protects against unfairness and partiality in the judicial process, and it eliminates the misleading impression that the judge is an advocate for the agreement rather than a neutral arbiter.[19]

Ms. Adkins never objected to the circuit court's involvement in plea discussions at the plea hearing or at her sentencing hearing, but she did raise this issue in her motion to withdraw her guilty plea. And while she does not separately assign error to the circuit court's participation in plea negotiations in her brief before this Court, we have stated that "judicial participation in plea negotiations is so inherently dangerous, an appellate court should raise the issue sua sponte and order appropriate relief."[20]

---

[19] *Id*. at 407, 456 S.E.2d at 487; *see also United States v. Bradley*, 455 F.3d 453, 461 (4th Cir. 2006) ("[Federal Rule of Criminal Procedure] Rule 11(c)(1)'s prohibition on judicial involvement in plea negotiations not only helps to ensure the voluntariness of a defendant's guilty plea; it also protects the integrity of the court and preserves public confidence in the judicial process.").

[20] *Brewer*, 195 W. Va. at 199 n.14, 465 S.E.2d at 199 n.14. We take this opportunity to caution that the rule against judicial participation in plea negotiations should not be applied so rigidly as to interfere with the everyday operations of the court. *See, e.g.*, *United States v. Frank*, 36 F.3d 898, 903 (9th Cir. 1994) ("The rule against judicial participation in plea bargaining protects the parties against implicit or explicit pressure to settle criminal cases on terms favored by the judge. It does not establish a series of traps for imperfectly articulated oral remarks."). A court may explain that the defendant has a decision to make regarding a plea and may impose a deadline, but the court cannot influence the defendant to accept or reject a particular plea bargain. A judge may also inquire as to whether the parties wish to consummate a plea agreement. *See, e.g.*, *People v. Venzor*, 121 P.3d 260, 264 (Colo. App. 2005).

This case demonstrates the confusion and uncertainty that arises when the court engages in plea discussions. The judge plays an essential role to ensure the impartial and objective administration of criminal justice. But when a judge becomes involved in plea discussions, he no longer acts as a neutral arbiter.[21] Given the sanctity of Rule 11's absolute prohibition of any form of judicial involvement in plea negotiations before an agreement is reached, we conclude that the first two elements of the plain error analysis are met; there was a violation of Rule 11, and this error was plain.

Even though it did not initiate these discussions, the circuit court engaged in off-the-record plea discussions to reach a deal in a case that had been pending for years. It acknowledged "talking to the lawyers about how *we* might settle this case"[22] and, for all intents and purposes, brokered the agreement between Ms. Adkins and the State when it told the parties that it was inclined to sentence Ms. Adkins to home confinement if a plea was reached. The record here markedly differs from *State v. Welch*,[23] where the parties merely sought the judge's opinion after reaching a plea agreement.[24]

---

[21] *Crumb v. People*, 230 P.3d 726, 731 (Colo. 2010).

[22] Emphasis added.

[23] 229 W. Va. 647, 734 S.E.2d 194 (2012).

[24] To be clear, a judge's inquiry into the terms of a plea agreement reached by the parties is not synonymous with negotiating a plea. To hold differently would conflict with a judge's duty under Rule 11 to ascertain whether a valid plea agreement exists. *See State* (continued . . .)

So, we turn our attention to the third element of the plain error analysis. When determining whether the Rule 11 violation affected Ms. Adkins's "substantial rights," we simply ask whether there is a reasonable probability that, but for the court's error, she would not have entered the plea.[25] Ms. Adkins has made that showing. At the sentencing hearing, Ms. Adkins's counsel referenced what the court said in chambers when it engaged in plea discussions and stated that "the only reason" Ms. Adkins entered the plea was because "we were told what the disposition would be."

Turning to the final inquiry—whether the Rule 11 violation seriously affected the fairness, integrity, or public reputation of the judicial proceedings—we conclude it did. "Judicial involvement with plea bargaining casts doubt over the entire process[,]"[26] and implicates the core function of the judicial branch, which is to administer

---

v. Vandehoven, 772 N.W.2d 603, 608 (N.D. 2009) ("The prohibition in Rule 11(c)(1), however, applies only to negotiations before an agreement is reached, and does not extend to discussions regarding a plea agreement which has already been negotiated and agreed to by the parties[.]").

[25] See United States v. Hemphill, 748 F.3d 666, 677 (5th Cir. 2014) (holding that when reviewing Rule 11 errors, appellate court should examine if there is "at least a reasonable probability that [the defendant] would not have entered a guilty plea absent the district court's injection of comments that went beyond merely evaluating a properly disclosed plea agreement."); see also United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004) (holding that a "reasonable probability" is one that, in the judgment of the reviewing court, is "'sufficient to undermine confidence in the outcome' of the proceeding.") (citation omitted).

[26] Brewer, 195 W. Va. at 198, 465 S.E.2d at 198.

13

justice in a fair and impartial manner.[27]  As the United States Court of Appeals for the Fourth Circuit has recognized, it will be rare that a clear violation of Rule 11's prohibition against judicial involvement in plea negotiations does not affect substantial rights.[28]  This case is no exception.  Regardless of the court's reasons for injecting itself into plea negotiations, the fact remains that Ms. Adkins was put in a position that could reasonably be perceived by a criminal defendant that is inconsistent with the court's role as a neutral arbiter.  To allow this plea to stand would run counter to the fair and impartial administration of justice.

Because a circuit court's improper participation in plea negotiations may lead to a perception of bias if the case ultimately goes to trial before the same judge, we consider it appropriate to direct that a different judge be assigned to the case upon remand.[29]  Ms. Adkins may withdraw her *Kennedy* plea to DUI causing death and, if she does, both she

---

[27] *See United States v. Werker*, 535 F.2d 198, 203 (2d Cir. 1976), *cert denied*, 429 U.S. 926 (1976) ("Rule 11 implicitly recognizes that participation in the plea[-]bargaining process depreciates the image of the trial judge that is necessary to public confidence in the impartial and objective administration of criminal justice.").

[28] *Bradley*, 455 F.3d at 463.

[29] *See, e.g.*, *United States v. Sanya*, 774 F.3d 812 (4th Cir. 2014) (vacating conviction and remanding the case for assignment to a different district court judge when judge improperly engaged in plea negotiations); *Bradley*, 455 F.3d at 465 ("We have little doubt that the district judge could be totally objective on remand, but our faith in his objectivity does not affect our decision. Regardless of the judge's objectivity, it is the defendant's perception of the judge that will determine whether the defendant will feel coerced to enter a plea.") (internal quotation marks and citations omitted).

and the State will be returned to the positions they were in before the execution of the plea;[30] she would be subject to the charges contained in the five-count indictment.

## IV.  CONCLUSION

For the reasons set forth above, we reverse the July 22, 2022, order of the Circuit Court of Cabell County denying Ms. Adkins's motion to withdraw her guilty plea and resentencing her for purpose of this appeal following her conviction for DUI causing death.  We also remand the case for assignment to a different circuit court judge.

Reversed and remanded with directions.

---

[30] *See State ex rel. Gessler v. Mazzone*, 212 W. Va. 368, 374, 572 S.E.2d 891, 897 (2002) (vacating conviction following guilty plea and noting that "the parties must be placed, as nearly as possible, in the positions they occupied prior to entry of the plea agreement.").